# DARBY MANAHAN and PATRICK GORMAN, *vs.* THOMAS SAMMON and GEO. A. THURSTON.

Judgments were recovered against G. in 1843, upon which *fi. fas.* were issued in 1844, and returned levied, and the land on hand for want of buyers. In January 1847, G. applied for the benefit of the insolvent laws, and his trustee duly appointed and qualified. In February 1847, writs of *vendi. exponas* upon these *fi. fas.* were issued, under which the property was sold in May following by the sheriff at public sale. HELD:

That the insolvent application transferred to the trustee the *sole and exclusive* right of selling the property, notwithstanding the outstanding *fi. fas.* previously levied, and the sheriff having no right to sell, his proceedings were null and void, and the sale by him passed no title to the purchaser.

Judicial sales are always favored by the courts: a purchaser under a *fi. fa.* upon a judgment subsequently reversed, will hold a valid title, and the title of a purchaser under a *fi. fa.*, issued more than three years after date of judgment without being revived by a *sci. fa.*, cannot be attacked in any collateral proceedings.

Titles in such cases are sustained upon the ground, that the proceedings under which they were obtained were not *void*, but only *voidable*, in consequence of irregularity merely.

But in this case the sheriff had, under the *vendi.* in his hands, no more power to sell the property than an execution against it would have given him to sell the property of B. No matter how perfect the judgment and *fi. fa.* against A. might be, a sale of B's estate under it would be nugatory and void.

The insolvent papers being filed before the sale, the purchaser is to be considered as having knowledge of the application and of the effect in law thereof, and the fact that the sale was made and the trustee made no objections thereto, from May 1847 to the year 1851, could give him no title.

The fact that writs of *vendi. exponas* were issued *after* the application, did not give the sheriff power to sell, or the purchaser any rights under the sale. The right to sell under the *fi. fas.* was taken away by the application and appointment of the trustee, and the *vendi.*, whether issued before or after the application, could not restore it.

A *vendi.* confers no power on the sheriff which he did not possess under the *fi. fa.;* it only commands and requires him to do what he could have done under the latter writ; the *fl. fa.* is the effective writ, and the sheriff may sell under it after a levy without a *vendi.*, and the return to the latter relates to and in legal effect becomes part of the return to the former.

Under the 7th sec. of the act of 1805, ch. 110, and the decision of *Alexander vs. Ghiselin*, 5 *Gill*, 138, a *fi. fa.* actually levied before application, only protects the lien of the plaintiff in the writ, so as to give him the right to claim payment out of the proceeds of the property when sold by the trustee, but gives no authority to the sheriff to sell.

The property of an insolvent is tranferred by law to his trustee, even though the deed of the insolvent to the trustee should be considered as defective for want of record.

Even though the property be not mentioned in the conveyance by the insolvent to the trustee, still the act of 1827, ch. 70, sec. 8, gives the sheriff no power to sell. This act only protects the lien of a creditor who proceeds against property not included in the insolvent's deed or schedule, to the same extent as that of an execution creditor, whose *fi. fa.* has been levied before the application is protected by the act of 1805, ch. 110.

The county courts have exclusive jurisdiction over cases of insolvency, and the insolvent's assets cannot be distributed in a court of equity.

APPEAL from the Equity Side of Allegany county court.

This appeal was taken from an order of the court below, (MARTIN, C. J.,) dissolving an injunction which had been previously granted upon the bill of the appellants, restraining the appellee, George A. Thurston, as trustee in insolvency of one George S. Greene, from selling certain real estate which had been purchased for $351, by Thomas Sammon, the other appellee, at sheriff's sale, under executions against said Greene, and with other property mortgaged by said Sammon to the appellants, to secure a debt of $1200. The facts of the case are fully stated in the opinion of this court and the argument of counsel.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Thomas Devecman* for the appellants.

The only question presented by this appeal is as to the validity of the sheriff's sale, made under the writs of *vendi.*

*exponas*, and the right of Thurston as the insolvent's trustee, after a lapse of five years, to proceed to resell the same property, notwithstanding he was cognizant of the sheriff's sale and of the issuing of the writs of *vendi. exponas*, and did not interpose to prevent or in any manner object to it. The appellee, of course, relies upon the case of *Alexander vs. Ghiselin*, 5 *Gill*, 138. That case differs from the present in the following particulars:—1st. In that case the trustee arrested the sale whilst in *fieri*, and before it was made, in this case the trustee was cognizant of the sale, and for five years acquiesced in it. 2nd. In that case *executions* were issued *prior* to the application of the insolvent and levied on personal property, whereas in this case the writs of *vendi.* were issued *after* the insolvent's application, and were directed against real estate. 3rd. In that case the rights of purchasers had not intervened, no sale having been made. We therefore insist:

1st. That the writs of *vendi. exponas* were not void, but at most only voidable; that the trustee having never interposed in any manner to set them aside, either by motion to quash or by injunction, cannot now impeach the sale made under them. And even if irregularly issued, their irregularity cannot be collaterally inquired into. *Miles vs. Knott*, 12 *G. & J.*, 452. *Ranoul vs. Griffie, ante*, 54. *Jackson vs. Robins*, 16 *Johns. Rep.*, 575. 3 *Howard*, 111.

In the case of *Alexander and Ghiselin*, the application of the party for the benefit of the insolvent laws is said to supersede all executions. But in this case it could not operate as a supersedeas of the *vendi.*, which was not then issued, and which, when afterwards issued, commanded the sheriff to sell the property specifically which he had previously seized. Being issued *after* the application, the writ could not be superseded by it, and commanding the sheriff to sell *specific* property, he was bound to execute it, and his acts are not void. 1 *G. & J.*, 448. Sales under judicial process are regarded with favor. 8 *G. & J.*, 358. Sales made under a judgment shall stand, although the judgment itself is after

wards reversed. 11 *G. & J.*, 217. 6 *H. & J.*, 182. This is a rule in favor of purchasers.

If an erroneous execution is set aside after sale, the party shall be restored to the money for which the property was sold, but not to the property itself. 2 *Bacon's Ab.*, 740, *tit. Execution.*

Where two writs are delivered to a sheriff, he must first execute the one first delivered; but if he first execute the one last delivered, the sale is good, and the first party has a remedy against the sheriff only. *Bingham on Judgments*, 247.

2nd. The deed from the insolvent to his trustee is inoperative and void, because it was never recorded.

The deed of the insolvent is expressly required to be recorded by the act of 1805, ch. 110, sec. 5.

The act of 1812, ch. 77, sec. 6, seems to have dispensed with a deed altogether; but the act of 1827, ch. 70, sec. 1, restored the law to what it was prior to the act of 1812, and declared that the deed should be executed, and that no discharge should be granted until it was executed; and the eighth section made all property not mentioned in the schedule liable to execution. This act, *pro tanto*, repealed the act of 1812, (which was a general law,) and as an evidence of it, we find that the act of 1829, ch. 208, sec. 3, was passed, restoring the act of 1812, so far as Baltimore was concerned. The law then, as it now stands under the act of 1805 and 1827, is exactly the same that it was under the act of 1798, ch. 64, sec. 5, with reference to the insolvent's deed to his trustee. The case of *Greenleaf vs. Birth*, 6 *Peters*, 312, is then conclusive upon the question, that the deed must be recorded, and that although there is nothing in the act expressly requiring its enrolment, still the legislature never intended to dispense with the general registry laws.

3rd. The sheriff's sale will be supported upon the ground, that a court of equity will always ratify and confirm that when done, which, if previously applied to, it would have ordered to be done. *Harris vs. Alcock*, 10 *G. & J.*, 252. In the case of *Magruder vs. Peter's Ex'crs*, 11 *G. & J.*, 217, a de-

cree was passed enforcing a vendor's lien against a *purchaser from the trustee* of an insolvent debtor. The insolvent's trustee in this case having failed to make a sale, a court of equity, if applied to, would have ordered a sale in favor of the judgment creditor. The trustee stood by and saw the sheriff sell without objection, and saw the purchase money applied and paid over, (and paid too just as he would have been compelled to pay it had he made the sale,) and the case is therefore directly within the principle in *Harris vs. Alcock.* To permit him now to impeach the sale, would enable him to commit a fraud on the purchaser. The judgments have been satisfied by the sale, and the purchase money properly applied.

4th. This was a good sale under the act of 1827, ch. 70, sec. 8, as this property was not included in the insolvent's schedule.

The description in the schedule is: *"All my interest in lands purchased at public sale of Chisholm, executor of O'Neale, All the real estate is held by mortgage or otherwise,"* and is void for uncertainty. 2 *H. & J.,* 146. 3 *G. & J.,* 290. *Md. Digest,* 512, sec. 12.

*Geo. A. Pearre* for the appellees, contended for an affirmance of the order:

1st. Because the property in controversy passed under the deed to the trustee, whose duty it became to sell it and to pay off the creditors according to their priorities. *Alexander vs. Ghiselin,* 5 *Gill,* 138. This decision establishes the position, "that the act of 1805, and the supplementary acts relating to insolvent debtors, requires the trustee to take into his possession all the estate and effects to which the insolvent had the right of possession at the time of his application, and to sell and dispose of all his property, whether in possession, reversion or remainder, and to pay off the liens and incumbrances thereon," (179.) If the trustee is required to sell he *alone* is authorised to sell, and the effect of this is as though the law had in *totidem verbis* declared, that all sales of any property made by sheriffs under any executions, after the in-

solvent's application, shall be null and void, *ipso facto.* Two different officers of the law cannot both have a right to sell the property. The law is a unit, and never permits the clashing of duties in its executive or judicial officers. If, under the *vendi.* in this case, the sheriff has a *right* to sell then he is *bound* to sell, because his *obligation* is co-extensive with his *right* or *duty.* Can the laws of the State be so construed, that two different purchasers, under two different officers of the law, shall be put in collision? The law then would be not the harmonious working of a uniform system, but she herself would cast the apple of discord among her citizens. It can make no difference whether the execution is issued *before* or *after* the application for the insolvent laws. If issued before and the sale made afterwards, the sale is void—if issued after and sale made after it is equally void. In whatever condition an execution or lien of any kind stands at the time of the application, it is there arrested. The principle, that a sale made under an execution that was irregular and liable to be set aside on motion shall be good to the purchaser, is not applicable to such a case as this; so a sale under a judgment which is afterwards reversed. In these cases the sale is good, because, as the books say, "the sheriff who made the sale had lawful authority to sell." 11 *G. & J.,* 242, *Magruder vs. Peter.* Not so in this case, the sheriff here had no lawful authority to sell. This court, in *Waters vs. Dashiel,* say, "so exclusive is the possession and control of the trustee, that he takes the estate free from the interference of the sheriff, mortgagees or others having prior liens," &c. 1 *Md. Rep.,* 471. The application of Greene for the benefit of the insolvent laws, had taken away all power to sell any property conveyed to the trustee.

2nd. The deed of the insolvent to the trustee was, in fact, recorded. Transcribing is not necessary to recording. The deed, together with all the other papers in the insolvent case, were deposited with the officers and in the office for recording all deeds of land. The deed was there among the public records. The law made it the duty of the officers to record it.

*Act of* 1805, sec. 14. If an ordinary deed is, by a party, taken to the record office and there left with the clerk for record, it may not be transcribed for ten years and yet it is recorded in legal contemplation.

3rd. It is contended on the part of the appellant, that the sale by the sheriff is good, on the ground that a court of equity will ratify, when done, that which, if previously applied to, it would have ordered to be done. Has a court of equity power to interfere with the positive enactments of statute law and to exercise the powers of judicial legislation? When the law has declared a trustee shall sell and the sheriff shall not, can a court of equity, in the very face of the statute, ratify and make a valid a prohibited sale? The maxim is *equitas sequitur legem.* "Where a rule, either of the common or the statute law, is direct and governs the case with all its circumstances, a court of equity is as much bound by it as a court of law, and can as little justify a departure from it." 1 *Story's Eq.,* sec. 64. The case of *Alcock vs. Harris,* 10 *G. & J.,* 252, states the principle in this wise: "A court of equity will always ratify and confirm that when done, *which, as a matter of course,* if previously applied to, it would have ordered to be done." Now would a court of equity, as a matter of course, if applied to for that purpose, have decreed that the sheriff should have proceeded and sold the property levied on, notwithstanding the appointment and qualification of a trustee? In the one case, the court of equity interferes because there is no remedy at law, or by her equitable jurisdiction helps the remedy at law, and exercises its jurisdiction as ancillary thereto. But in the other case the law has provided the fullest remedy, and specially pointed out the mode of its execution.

4th. Again, it is said on the part of the appellant that the sale by the sheriff is good under the act of 1827, ch. 70. But even if it were not included in the schedule and although an execution might be levied upon it, still the trustee must sell the property. *Waters vs. Dashiell,* 1 *Md. Rep.,* 472. But it is included in the schedule as "all my lands purchased at

public sale of Chisholm, executor of O'Neill." This could be made certain by showing the land purchased of O'Neill's executor. The case of *Blessing vs. House*, 3 *G. & J.*, 290, clearly shows that a reference in a deed to any other papers is good to identify the land. In that case, if the will had shown a proper description of the land, the deed would not have been declared void for uncertainty.

ECCLESTON, J., delivered the opinion of this court.

The appellants filed their bill in this case on the 19th of June 1851, praying a decree for the sale of certain real estate for the payment of a debt due them by T. Sammon, under a mortgage executed by him, on the 17th of September 1850; and likewise praying an injunction to restrain G. A. Thurston, as trustee of G. S. Greene, an insolvent petitioner, from selling the property, or intermeddling therewith in any manner.

The property was originally purchased by G. S. Greene, of Wm. Chisholm, executor of Mary Ann O'Neill, and he gave his notes to secure a portion of the purchase money. On these notes Chisholm obtained judgments against Greene in 1843, and issued writs of *fieri facias* upon them in 1844, which were levied on the real estate in controversy. The sheriff returned the writs as levied and on hand for want of buyers. On these *fi. fas.* writs of *venditioni exponas* were issued, on the 25th of February 1847, and on the 5th of May following the property was sold under these writs to Thomas Sammon, by N. Bruce, as sheriff.

On the 14th of January 1847, George S. Greene became a petitioner for the benefit of the insolvent laws, and G. A. Thurston was appointed and qualified as his trustee. The insolvent papers were returned in the usual manner and filed by the clerk, on the 24th of January 1847.

The injunction was granted in the first instance; and afterwards dissolved. From the last order this appeal is taken.

The important question necessary to be decided is, whether the sale by the sheriff passed any title to Sammon?

It has been very correctly said, that judicial sales are al-

ways favored by courts. That a purchaser under an execution upon a judgment subsequently reversed will, nevertheless, hold a valid title to the property; and that the result will be the same where a sale is made under a *fi. fa.*, issued more than three years after the date of the judgment, without being revived by a *sci. fa.*, unless the sale is set aside by some proceeding on the part of the defendant in that particular case. Such a title cannot be rendered nugatory in any collateral proceeding. These titles, however, have been sustained, upon the ground that the proceedings under which they were obtained were not void but only voidable, in consequence of irregularity merely. *Miles vs. Knott*, 12 *G. & J.*, 452, 453. *Jackson vs. Robins*, 16 *Johns.*, 575, 576. In such cases the matter of irregularity in the process has been the important question, not whether the title of the defendant in the execution, at the time of sale, was such as could be sold under the writ. But in the present instance there is no dispute as to the regularity of the judgment, nor any allegation of irregularity in regard to the time or manner of issuing, levying or returning the *fi. fas.*, or that the writs of *vendi.* were at all defective in any matter of form. The objection here is, that before the sale took place, the insolvent application of Greene had transferred to his trustee the *sole and exclusive* right of selling the property, notwithstanding the outstanding *fi. fas.* previously levied. And this doctrine is fully sustained by the decision in *Alexander, et al., vs. Ghiselin, et al.*, 5 *Gill*, 179. There the right of a sheriff to sell under a *fi. fa.*, actually levied before the insolvent's petition, was expressly denied; and the authority of the trustee to make the sale as clearly asserted. This being so, the sheriff, Bruce, under the writs of *vendi.* in his hands, had no more power to sell the property than an execution against A would have given him to sell the property of B. No matter how perfect the judgment and *fi. fa.* against A might be, a sale of B's estate under it would be nugatory and void.

But this case is said not to be affected by that of *Alexander vs. Ghiselin*, because there no sale was made, whilst here

there was; and the trustee stood by without making any objection, from 5th of May 1847 until the year 1851. Now, according to the doctrine of that case, no one but the trustee of an insolvent has a right to sell the insolvent's property. And every one is presumed to know such to be the law. Here, too, the insolvent papers being filed before the sale, and therefore being matters of record, Sammon is to be considered as having knowledge of Greene's application. Under these circumstances Sammon took no title by the sale, and the ·silence of the trustee, (a mere representative of the creditors,) could give him no title.

It has also been insisted that there is an essential difference between this case and the one reported in 5 *Gill*, 179, inasmuch as there the *fi. fa.* was issued and levied before the petition, and the sale prevented by injunction; and here the *fi. fas.* being levied prior to the application, writs of *vendi.* were subsequently issued. Those writs having been issued by a court of general jurisdiction, commanding the sheriff, after the insolvent's petition, to make sale of the property specifically named in the writs, it is contended, gave the officer such power to sell, that the purchaser acquired rights under his sale which cannot now be resisted successfully by the trustee. This, as a legal proposition, we cannot assent to.

We have seen that the right to sell under the *fi. fas.* was taken away by the petition of the insolvent, and the appointment of his trustee. If so, the writs of *vendi.*, whether issued before or after the application, could not restore the right. A *vendi.* confers no power on a sheriff which he did not possess under the *fi. fa.* The former only commands and requires him to do what he could have done under the latter. The *fi fa.* is the effective writ. He could sell under it after a levy, without a *vendi. Clerk vs. Withers, Ld. Raym.*, 1072. 2 *Tidd's Pr.*, 1013, *(new ed.)* 1 *B. & A.*, 230. In *Clark vs. Belmear*, 1 *G. & J.*, 448, the Court of Appeals say : "The *fieri facias* is the effective writ in these cases, it not only authorises the sheriff to seize, but to sell; very different is the office of a *venditioni exponas.* That confers no new power to the sheriff; it

does not authorise him to do any act that he might not have done under the *fieri facias.* It is only a mandatory writ, and directs him to carry the *fieri facias* into effect, by selling the lands taken in execution under it, and when the lands are sold, the return to the *venditioni* relates to, and in legal effect becomes part of, the return to the *fieri facias.*" The 7th section of the act of 1805, chapter 110, provides, that no judgment to be entered after the insolvent's application shall be a lien on his real property, nor shall any process against his real or personal property have any effect thereon, except writs of *fieri facias, actually and bona fide levied before such application.* And the decision in *Alexander vs. Ghiselin* being, that even such a levy under a *fi. fa.* confers no authority on the sheriff to sell, but that the trustee is the officer having the exclusive power to make a sale, it would be a strange construction to say, a *vendi.* could divest the authority of the trustee, and transfer it to the sheriff; especially when the act declares: "Nor shall any process against his real or personal property have any effect thereon, except writs of *fieri facias actually and bona fide levied before such application.*" And the construction, as to the exception in regard to a *fi. fa.* so levied, is, that the plaintiff in such writ will have his lien so far protected, as to have the right to claim payment thereof out of the proceeds of the property, when sold by the trustee. Of course, a *fi. fa.* issued before, and levied after, the application, and one issued after, can have no effect upon the property. As the only exception made in favor of any species of process, even to the extent of creating a lien, without giving authority to sell, is that of a *fi. fa.* levied before the petition; with what sort of propriety can it be supposed that a *vendi.*, which is dependent upon it for all its power and efficacy, can give the right to sell, simply because it issued after the application?

The appellants' counsel objected to the validity of the deed from the insolvent to his trustee, because it was not acknowledged before the proper officer; and also because it has not been recorded. The first objection he eventually abandoned, and properly so. The last need not be noticed, for the reason that

60 v. 3

we think the property of an insolvent is transferred, by law, to his trustee, if the deed is defective.   This principle has been recognised in the case of *Waters vs. Dashiell*, 1 *Md. Rep.*, 472, and we feel no disposition to change our views on the subject.

But it is contended, that if the objection to the deed for not being properly recorded cannot be sustained, still, under the act of 1827, ch. 70, sec. 8, Sammon took a good title, by virtue of the sheriff's sale to him.   It is said the property in controversy if included at all in the deed, is so defectively described that it cannot pass by the conveyance.

Assuming, then, this property is to be considered as if not mentioned in the deed, the appellants claim that, by the act of 1827, the sale made to Sammon was valid.   But here, likewise, we have the authority of *Waters vs. Dashiell* for saying, if the property was not included in the conveyance, the sheriff had no authority to sell.   The construction there given to that act was designed to make it harmonize with the principles established in *Alexander vs. Ghiselin,* so as to render the different portions of the insolvent system uniform, and not to have one part inconsistent with another.   The interpretation put upon the act of 1805, ch. 110, in the last mentioned case, fully justifies that given in *Waters vs. Dashiell,* in regard to the act of 1827, ch. 70.   By this last decision the lien of the creditor, who finds out property which the insolvent has failed to include in his deed or schedule, and has not delivered over to the trustee, but may have intentionally concealed, is protected in his lien, precisely to the same extent which an execution creditor is, whose *fi. fa.* has been levied before the application.   And this lien right is a fair compensation for the vigilance and activity displayed in searching out the concealed property.

In regard to the effective operation of the transfer of property to the trustee by the insolvent's application, in addition to what has already been said, see the strong language used in 5 *Gill,* 178 to 180; and also in the case of *Somerville vs. Brown,* 5 *Gill,* 425.

From what has been said, it follows as a necessary consequence, that Sammon took no title under the sheriff's sale; of

course he could convey none by the mortgage which he gave. The complainants are, therefore, not entitled to the relief prayed for, and we are compelled, reluctantly, to affirm the order dissolving the injunction, and to dismiss the bill.

The case is a hard one, and if we had the authority to grant relief, we should do so with great cheerfulness. But the assets in insolvency are not to be distributed in a court of equity. That duty is to be performed by the court having exclusive jurisdiction over cases of insolvency. However, nothing is here said which denies to that tribunal the right, when disposing of the proceeds of this property, after a sale by the trustee, to substitute the purchaser at the sheriff's sale, or those claiming under him, in the place of the creditor whose lien may have been paid by the proceeds of sale under the executions.

*Order affirmed, and bill dismissed.*