PETER S. REYNOLDS *vs.* THE MUTUAL FIRE INSU-
RANCE COMPANY OF CECIL COUNTY.

*Effect of the discharge of an Insured under the In-
solvent Laws, upon his Premium Note to the
Insurance Company—Estoppel—Evidence.*

R, in consideration of the insurance of his buildings against fire, gave
to the insurance company, incorporated upon the mutual plan, his
premium note, which was to be paid " in whole or in such sums, and
at such times, as the managers of the company should or might call
for the same, according to the provisions of the Act of incorporation
and by-laws of the company, as recognized and authorized by the said
Act of incorporation, and interest thereon at six per cent., to be paid
annually in advance, so long as the managers of the said company
might find it necessary to call in and receive the same." Subsequently,
on the 25th of December, 1860, R applied for the benefit of the insol-
vent laws, and obtained his discharge. The interest on the premium
note, and the taxes assessed by the company, were regularly paid to
August, 1862, inclusive, by the insured. On the night of the 3d of
February, 1863, a portion of the buildings insured was destroyed by
fire. In an action by the insured against the company, to recover the
amount of the loss he had sustained by the destruction of his property
by fire, it was HELD :

1st. That the discharge of the insured under the insolvent laws released
him from all liability upon his premium note to the insurance company,
and being so released, the contract of insurance ceased to be mutual, and
the company was no longer bound thereby, and the insured, therefore,
was not entitled to recover.

2d. And that the insurance company was not estopped from denying the validity of the contract of insurance, by the receipt of the interest on the premium note, after the application of the insured for the benefit of the insolvent laws, the company having had no actual notice of the proceedings in insolvency and the discharge of the insured, until long after the last payment of interest.

Where agency is proven, evidence to show the special character and extent of such agency, is admissible.

APPEAL from the Circuit Court for Cecil County.

*First Exception:* The plaintiff, to support the issue on his part joined, offered in evidence and proved the execution and delivery by the defendant of the policy of insurance, dated the 5th of October, 1858, insuring certain property of the plaintiff, situate in the town of Hillsborough, and that he had regularly paid the interest on his premium note, and the taxes assessed by the company to August, 1862, inclusive; and that a part of the property insured, consisting of a new frame hotel-building, &c., was destroyed by fire on the night of the 3d of February, 1863, and that he was in possession of the property, claiming title thereto at the time the fire occurred.   The defendant, to support the issue joined on its part, offered in evidence the record of proceedings on the application of the plaintiff for the benefit of the insolvent laws, from which it appeared that the application was made on the 25th of December, 1860, and the final discharge was obtained in October, 1862—and that the property insured was sold by the trustee in insolvency to one Thomas Sparklin.   The defendant also proved by the secretary of the company, that no written notice was received by him until after the fire, of the insolvency of the plaintiff, or conveyance to the trustee, or sale by the trustee to Sparklin, or the discharge of the plaintiff under the insolvent laws; and that so far as he knew, no notice of said facts, or any of them, came to the knowledge of the defendant until after the fire.

The plaintiff then proved that the property purchased in the name of Sparklin, was for the use and benefit of the

plaintiff, by whom the purchase money was paid; and that previous to the sale, and from the time of the sale, until the fire, he was in possession of the property, claiming to be the owner thereof. The plaintiff further proved that his application for the benefit of the insolvent laws, was a matter of public notoriety in Caroline county, and that the sale made by the trustee was a public sale at the court-house door in said county, within sight of the place of business of Alexander Stewart, the agent of the defendant to receive payment of the interest on the premium notes.

The plaintiff thereupon prayed the Court to instruct the jury that if they find all the facts stated in this exception, they may find a verdict for the plaintiff.

And the defendant offered the following prayer:

That if the jury shall believe from the evidence, that the defendant is a Mutual Insurance Company, and that the plaintiff insured the property destroyed by fire, in said company, on the fifth day of October, 1858, and made and delivered to said defendant the following premium note, offered in evidence in this cause, for the sum of $108.89:

$108.89. For and in consideration of a policy of insurance issued to me this day, upon property described in application and survey, No. 1,895, on file in the office of the "Mutual Fire Insurance Company of Cecil county," of the aggregate value of two thousand three hundred and eighty-three dollars; I, Peter S. Reynolds, of Caroline county, and State of Maryland, do hereby promise and oblige myself to pay to the said insurance company the sum of one hundred and eight dollars and eighty-nine cents, current money, in whole or in such sums and at such times as the managers of the said company shall or may call for the same, according to the provisions of the Act of incorporation and by-laws of the said company, for the uses and purposes of said company, as recognized and authorized by the said Act of incorporation, and to pay an interest of six per cent. thereon annually, in advance, so long as the managers of the said company may find it necessary to call in and receive the same.

Witness my hand and seal, this 5th day of October, in the year 1858.

PETER S. REYNOLDS, (Seal.)

Witness: Thomas C. Nicols.

And that the said plaintiff, after making and delivering said premium note, on the 25th day of December, 1860, filed his petition in the Circuit Court for the Seventh Judicial Circuit of Maryland, held in and for Caroline county, praying the benefit of the insolvent laws of Maryland, and that afterwards, on the first Tuesday after the first Monday of October, in the year 1862, the said plaintiff was duly discharged, and shall further believe that the property insured was not destroyed by fire until the 3d day of February, 1863, then the plaintiff is not entitled to recover in this action.

The Court refused to grant the prayer offered by the plaintiff, but granted the prayer of the defendant. The plaintiff excepted.

*Second Exception:* The defendant offered to prove by F. A. Ellis, the secretary and treasurer of the defendant, that Alexander Stewart, was a special agent to receive the payment of the annual interest upon the premium or deposit notes of members of the company upon receipts previously prepared and signed by himself, the said Ellis, as treasurer of the company, and sent to said Stewart before the day of the annual meeting of the company, (being the first Saturday in August, annually,) when all payments of the premium interest fell due; and that his only authority was to receive the money and deliver the receipts to the parties named therein; that it was no part of his duty to look after and report to the company the alienation or change of title to property insured in the company; and that he had no authority to make surveys and receive the money on them.

To the admissibility of so much of said evidence as states "that it was no part of the duty of Alexander Stewart to look after and report to the company the alienation or change of title to property insured in said company," and "that he had

no authority to make surveys and receive money on them," the plaintiff objected, but the Court overruled the objection and permitted the evidence to go to the jury. The plaintiff excepted, and the verdict and judgment being against him he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ALVEY, J.

*Henry W. Archer,* for the appellant.

The defendant's prayer was erroneously granted; the policy was not rendered void, but only voidable or "subject to termination" by the transfer of title, and the re-purchase from the trustee before the loss occurred, restored the policy to its original force and effect. *Carrol vs. The Boston Marine Ins. Co.,* 8 *Mass.,* 515; *Angell on Insurance, ch.* 9, *secs.* 193-203; 2 *Am. Leading Cases,* 621.

There was evidence in the cause from which the jury might find that the defendant had notice of the transfer of title, and its subsequent receipt of interest on the premium note was a waiver of forfeiture, and evidence of the defendant's election to continue the insurance. *Coursin vs. The Penna. Ins. Co.,* 46 *Penna.,* 323; *Buckley vs. Garrett,* 47 *Penna.,* 204; *Ripley vs. Ætna Ins. Co.,* 29 *Barbour,* 552.

It was immaterial whether the plaintiff was or was not released from liability upon the premium note; but if it were material—the payment by him of the interest thereon after his application for the benefit of the insolvent laws, was evidence of a new promise and renewal of liability on the note.

The Court below erred in refusing the plaintiff's prayer; there was proof before the jury of the execution of the policy, the loss by fire and due notice thereof, the regular payment of all interest, charges and assessments, and the plaintiff was the owner of the property when the fire occurred. If the jury found those facts to be true, the plaintiff was entitled to a

verdict, notwithstanding the jury may have found all the facts offered in evidence by the defendant. *Goldsborough vs. Orr*, 8 *Wheaton*, 217, 224; 1 *Salkeld's Rep.*, 171; 1 *Saunder's Rep.*, 319, h. 320; 2 *Parsons on Contracts*, 4, and note, (e); *Platt on Covenants*, 71, 78.

The plaintiff's application for the benefit of the insolvent laws, his deed to the trustee, and the sale by the trustee to Sparklin for the plaintiff's use, did not separately or collectively constitute such an alienation as deprived him of an insurable interest in the property. He was at no time without an insurable interest. *Angell on Insurance, secs.* 57, 58, 59, 68, 70, 71, 72; *Strong vs. Ins. Co.*, 10 *Pick.*, 40, 44; *Lagorus vs. Ins. Co.*, 19 *Pick.*, 94; 2 *American Leading Cases*, 550, 551.

*William J. Jones* and *Alexander Evans*, for the appellee.

The appellant had no insurable interest in the property after his application for the benefit of the insolvent laws, the execution of the deed to the trustee, and the filing of the trustee's bond. All the appellant's interest in the property vested in his trustee. *Code, Art.* 48, *sec.* 2; *Adams vs. Rockingham Mutual Ins. Co.*, 16 *Shep.*, 292; *Alexander vs. Ghiselin*, 5 *Gill*, 138; *Waters vs. Dashiel*, 1 *Md.*, 472; *Manahan, et al. vs. Gorman, et al.*, 3 *Md.*, 463; *Jamison vs. Chestnut*, 8 *Md.*, 34.

And the insured party cannot set up any defect in the assignment to the trustee, to avoid the effect of the assignment on his insurable interest. *Dadmun Manuf. Co. vs. Worcester Fire Ins. Co.*, 11 *Metcalf*, 429; *Adams vs. Rockingham Mutual Ins. Co.*, 16 *Shep.*, 292.

Having no insurable interest, the continuance of the appellant to pay the interest on his premium note, was a mere gambling venture on his part, and as such, wholly contrary to the policy of the law, and void. *Adams vs. Pennsylvania Fire Ins. Co.*, 1 *Rawle*, 108; *Duer on Insurance*, 95; 3 *Kent's Comm.*, 276, 277; *Atwell, et al. vs. Millar*, 11 *Md.*, 361; *Lee vs. Bareda*, 16 *Md.*, 190.

By the Act of 1845, chapter 249, section 6, the appellee's charter of incorporation expressly made a part of the policy, it is required that the assent to alienation and assignment shall be, by the president or secretary of the company, endorsed on the policy, which assent and endorsement was neither applied for nor obtained.

Mutual promises to be binding, must be concurrent and obligatory on both parties at the same time, whereas, by his discharge under the insolvent laws, the appellant was entirely released from the payment of his note for $108.89, constituting part of the capital of the insurance company, while if his claim be just, the company would be bound to pay the losses; the risk of doing which was the sole consideration to the note. *Livingston vs. Rogers*, 1 *Caine's N. Y. R.*, 583; *Tucker vs. Woods*, 12 *Johns.*, 190; *Keep vs. Goodrich*, 12 *Johns.*, 397.

The appellant gave no notice of the assignment, alienation or bankruptcy, though bound to do so. *Tyler vs. Ætna Ins. Co.*, 12 *Wendell*, 507, and 16 *Wendell*, 385, 396.

The assent of the underwriters is indispensable in fire assurance to any assignment. *Lane vs. Maine Mutual Fire Ins. Co.*, 3 *Fairfield*, 44; *Smith's Mercantile Law*, 259; *Angell on Fire Insurance*, Art. 199; *New York Life Ins. Co. vs. Flack*, 3 *Md.*, 341; *Act of* 1845, *ch.* 249, *sec.* 6.

By the transfer of the property by the appellant to the trustee, the appellant, under the facts in the case, not only ceased to have any insurable interest therein, (*Wilson vs. Hall*, 3 *Metcalf*, 66,) but did not reäcquire any by the sale in secret trust for himself to Sparklin. *Act of* 1845, *ch.* 249, *sec.* 6.

GRASON, J., delivered the opinion of the Court.

On the 5th day of October, in the year 1868, the appellant obtained insurance against fire, upon buildings in Caroline county, in the Mutual Fire Insurance Company of Cecil county, for $2,383, and at the same time, in consideration thereof, executed and delivered to the company his note, called a premium note, for $108.89, to be paid "in whole

or in such sums and at such times as the managers of the said company shall or may call for the same, according to the provisions of the Act of incorporation and by-laws of the said company, as recognized and authorized by said Act of Incorporation, and interest thereon, at six per cent., to be paid annually in advance, so long as the managers of the said company may find it necessary to call in and receive the same." The record shows that the appellant regularly paid the interest on said note, and the taxes assessed by the company to August, 1862, inclusive, and that, on the 25th day of December, 1860, he applied to the Circuit Court for Caroline county, for the benefit of the insolvent laws, and was finally discharged in the month of October, 1862, and that the buildings described in the policy were destroyed by fire in February, 1863. The company refused to pay the insurance, and the appellant instituted suit against it in the Circuit Court for Cecil county, and the judgment being in favor of the company, the plaintiff below took this appeal.

The consideration given for the policy of insurance was the premium note of the appellant. Where insurance companies conduct their business exclusively upon the mutual plan, they have to look to the premium notes of the insured for the means of paying losses that may occur, and for this purpose they assess upon their members and call in such sums as may be necessary. It is therefore essential that the parties giving their premium notes shall be under a legal obligation to pay the amounts of their respective notes, in such sums and at such times as the companies may require and call for the same, in accordance with their charters and by-laws. If the insured be discharged from their liability to pay, it follows that the insurers are also released from their obligation to indemnify against loss by fire; otherwise there would be no mutuality in the contract between the parties. Was the appellant released from the legal obligation of his contract with the appellee by his discharge under the insolvent laws? The 4th section of the 48th Article of the Code provides that, "if

the creditors, endorsers or sureties shall fail to make any allegations or propose interrogatories, or if the same shall be answered satisfactorily, or determined in favor of the insolvent, the Court shall discharge the insolvent from *all debts and contracts made before the filing of his petition*, and he shall be released from *all such debts and contracts.*"

The contract of the appellant with the appellee was entered into before the former filed his petition for the benefit of the insolvent laws, and his discharge operated a release from all liability upon his note to the appellee; and had any necessity arisen for calling in sums from parties insured for the purpose of paying losses incurred by fire, the appellant could have successfully resisted any such call upon him, by pleading his discharge under the insolvent laws. After his discharge there remained no mutuality in the contract between him and the appellee, and he cannot be permitted to hold it bound by its contract, while he himself has been released from all liability upon his note, which is the only consideration on which the policy was issued. He is therefore not entitled to recover from the appellee for the loss he has sustained by the destruction of his buildings by fire, even if it appeared from the record that he had an insurable interest therein at the time of the fire.

But it was contended that, by reason of the receipt by the appellee from the appellant, of interest upon the premium note after the filing of the petition for the benefit of the insolvent laws, it has waived any right it may have had to treat the policy of insurance as at an end, and no longer binding upon it, and is estopped from now denying its continuing validity. This argument is based upon the fact that the proceedings in insolvency were had in a Court of record, whose proceedings are constructive notice to the whole world, and that, having received the interest on the appellant's note with this constructive notice of his application for the insolvent laws, the appellee cannot now avail itself of said application as a defence to this action. If the proof had shown that the

appellee had received the payments of interest with actual knowledge of the appellant's application for the benefit of the insolvent laws, there might have been some reason for the argument that it had thereby waived its right to hold itself absolved from its contract; but, upon that question, we do not mean to express any opinion. But the proof clearly shows that the proceedings in insolvency were had in a Court at some distance from the county in which the office of the appellee was located and its officers resided, and that they had no actual notice of those proceedings, and the discharge of the appellant, until long after the month of August, 1862, when he made his last payment of interest. The principle is well-settled, that a party will not be held to have waived his rights or to be estopped by his conduct and acts, unless it is shown that he has acted with full knowledge of all the facts affecting his rights. *Ijams vs. Hoffman*, 1 *Md.*, 437, 438; *Gray vs. Murray*, 3 *Johns. Ch. Rep.*, 188; *Bennett vs. Colley*, 2 *Myl. & Keene*, 225; *Howard vs. Carpenter*, 11 *Md.*, 279; *Flagg vs. Mann*, 2 *Sumner*, 563.

We find no error in the rulings of the Court below, in refusing the instruction asked by the appellant, or in granting that asked by the appellee.

The evidence in the second exception, which was objected to by the appellant and admitted by the Court, was legally admissible. Proof having been offered to show that Alexander Stewart was agent of the appellee, residing in Caroline county, the evidence objected to was admissible to show the special character and extent of the agency. The judgment appealed from must be affirmed.

*Judgment affirmed.*

(Decided 3d March, 1871.)

STEWART, J., delivered the following dissenting opinion:

The plaintiff below brought his action against the insurance company, the defendant, to recover for the destruction of his premises by fire. There is no charge of fraud or misrepre-

sentation, on the part of the insured, alleged in the case. Assuming that the evidence made out an insurable interest on the part of the plaintiff in the property, when the policy was issued, and when the fire occurred, the material questions involved are : First, whether the transfer of the property by the appellant, to his trustee in insolvency, vacated the policy; and, secondly, did the discharge of the insured, as an insolvent debtor, operate to relieve the insurance company from liability, although the policy is not annulled by the alienation. The two questions are involved in the prayers, the one presented by the plaintiff, the other by the defendant, in the first bill of exceptions. The Court below refused the plaintiff's and granted the defendant's prayer.

In regard to the transcript of the record of insolvency offered in evidence by the company, it is observable that Peter S. Reynolds, on the 25th of December, 1860, applied for the benefit of the Act of 1854, chapter 193. This application was subsequent to the adoption of the Code, February 14th, 1860.

The deed to his trustee was executed on the 25th of December, 1860, and purported to be, according to the Act of Assembly in such case, made and provided. The Code repealed the Act of 1854, substituting therefor its 48th Article. No valid proceeding in insolvency, or transfer of property to a trustee, in pursuance of the Act of 1854, could take place after the adoption of the Code, but must be in accordance. with the provisions of the Code.

Whilst the company require a liberal construction in regard to their pleadings, they urge a very different theory of interpretation of the policy, to exclude the insured from recovery against them. But it is not material, from the view now taken, to consider the precise effect of these proceedings, or whether any distinction ought to be made between the alienation to a trustee in insolvency, from any other transfer. If the policy does not provide, by its terms, that the alienation of the property shall vacate it, yet, if the insured has divested

himself of all interest therein at the time the fire has destroyed it, he has no insurable interest entitling him to indemnity.

The general principles controlling such a contract, prevent recovery under such circumstances, because, in fact, the insured has sustained no loss. It is well settled, that the contract of insurance is one of indemnity for loss to the insured, and if he has no interest in the property when the fire destroys it, he requires no indemnity. *Wash. F. Ins. Co. vs. Kelly*, 32 *Md.*, 436. But, notwithstanding, the insured cannot recover during his divestiture of interest in the property, yet if, at the occurrence of the fire, he has reäcquired the property, he has an insurable interest therein, and is entitled to recover indemnity, because he must then suffer loss.

The failure to recover is not because the policy is void, but because he sustains no loss; but when he does sustain loss by the fire, the fact of proving alienation, suspending his right to recover, ought not to prevent recovery when his right to the property has been restored at the time of the fire. See 2 *Amer. Leading Cases*, 463; *Angell on Ins.*, 234, 235.

According to the policy and principles governing contracts of insurance, they ought to be construed so as to give them effect according to the true intent of the parties, regardless of mere technical objections. In this case, the contract is to be interpreted and explained by the terms and conditions of the Act of incorporation, (1845, chapter 249,) for the purpose of ascertaining the obligations of the parties in cases not provided for in the policy.

Assuming that the transfer by the insured to his trustee, was an absolute alienation of the property which deprived him of all insurable interest therein, the terms of the policy do not declare the policy to be void on that account. The policy commences with a preamble, stating the desire of the appellant to become a member of this Mutual Fire Insurance Company, and to have certain property therein mentioned and valued, insured. It then recites that he has deposited with the company his premium obligation, and declares that

he has become a member, and is insured, and that the "insurance is to be considered *perpetual*, provided all interest, charges and assessments due from the insured shall be regularly paid; *subject, however, to termination* upon the transfer or alienation, or removal of the property, or to adjustment, or withdrawal, when either party, upon the notice provided for by the by-laws in such case made and provided, shall require it." To this extent, the policy is evidently a simple declaration, that the party is insured *perpetually, if the interest, charges and assessment are regularly paid*, with this qualification however, that it *may be terminated* by a transfer of the property, or by adjustment or withdrawal, when either party, upon the notice provided for, shall require it. This statement is merely descriptive and explanatory of the first part of the sentence, declaratory of the *perpetuity* of the policy, and intended to modify its extent by the language employed, "subject, however, to termination." It is not a stipulation for the forfeiture of the policy, by the alienation of the property.

After this preamble, recital and declaration, it then *stipulates*, that in consideration of the premises, the company promises to pay to the insured the sum specified therein, in case of loss by fire during the time the policy shall remain in force, "provided, always, and it is mutually understood between the parties, that there can be no abandonment of the subject insured, but that the insured, in case of fire, shall use his utmost exertions to prevent destruction or loss thereby; and provided, also, that if any unleached ashes be kept in any wooden vessel, in any building insured, this policy *shall be void;* and provided, further, that if the insured shall keep, use, or suffer to be kept, any gunpowder, or other explosive article in any building insured, and loss by fire shall occur in consequence, the company shall not be liable for such loss."

These last provisions are the mutual stipulations of the parties, and expressly define what *avoids* the policy, or renders the company *not liable*, and unmistakably so declare. In

no one of them is it made a forfeiture to transfer the property. Construing the instrument, with its various parts, it is obvious that the statement that the policy was *subject to termination* by a *transfer of the property*, was inserted for the purpose stated. If it had been the design to make the policy void on *that account*, such a stipulation would have been inserted with the other mutual covenants, and been so distinctly declared.

The law inclines to the support of contracts rather than to their abrogation, and a construction will not be put upon them to destroy them, or work a forfeiture, unless such be the manifest intent and purpose of the parties. The particular section of the Act of incorporation applicable to the interpretation of the terms of the policy, "subject to termination upon the transfer or removal of the property, or to adjustment or withdrawal, when either party shall require it," shows that they had no reference to a *forfeiture* of the policy, but to its *perpetuation* in the hands of an assignee, or to a mutual adjustment in case of the withdrawal of a member insured, in keeping with the character of the company as a *mutual association*.

The sixth section declares, "upon the withdrawal of a member, or the *cancelling* of a policy *from any cause*, the deposit note, with all unappropriated interest paid thereon, or clear profits, shall be given up to the retiring member; and in case any person insured shall *convey the property*, *it shall be lawful* for him to deliver to the purchaser the policy of insurance in such form as shall be prescribed by the by-laws, and such assignee shall have all the benefit of such policy ; provided, that before any loss happens, the consent of the president or secretary shall be obtained ; and provided, also, that upon the withdrawal of the promissory note originally given, the assignee shall execute a note for a like sum of money, subject to all the incidents of the original note."

So far from alienation of the property being intended to forfeit the policy, this section of the law provides for the *continuance* of the policy in such case, and its operation in the

hands of the party to whom assigned, if he complies with the terms prescribed under such circumstances. If this is not done, and he may be debarred from recovery, it is not because the policy has become void, but owing to his omission to take the steps provided to give him a right of action. The construction that annuls the policy, *ipso facto,* upon the alienation of the property, is in direct conflict with this section of the law.

The seventh section is of like tenor. "Policies so long as the *property insured,* or the *character of the risk remains unchanged,* and no *adjustment* is required by either party, shall be in *full force, provided the annual payment of interest* on the deposit note of the *party insured* is regularly paid."·

This shews that the right of *adjustment* in case of alienation is *optional* with either party.

The eleventh section also provides, that neglect to pay the interest on the note deposited by the insured, or any sum assessed for his proportion of any loss, suspends his right to recover for any loss, and continued for thirty days, operates *ipso facto* to expel him as a member of the corporation.

It would be a harsh construction in the face of these provisions of the charter, and the corresponding stipulations of the policy, to attach such meaning to the language referred to, as to destroy the policy, when its continued integrity as a contract may be maintained by another reasonable interpretation.

The provisions of the policy and the law of its charter appear to regard, rather the *perpetuation* of the policy, than its *abrogation.* The regular payments of the premiums of insurance seem to be the material and *indispensable* requisites to its continuance. There is no evidence in the record to shew that any steps were ever taken by the company to *terminate* the policy by reason of the alienation of the property, and it is not a fair presumption that they did so when they regularly received the premium for insurance.

The fact of the alienation only rendering the policy liable to termination, or to adjustment as indicated, if the property was re-purchased by the insured, and was paid for, in whole or

in part, thus giving him but the equitable title thereto when the fire occurred, the plaintiff had an insurable interest therein; and if the payment of the premium was not discontinued, but regularly made and received by the company, all of which facts, were to be found by the jury, no element of a binding contract of insurance is wanting, and according to the principles of equitable construction, governing contracts of insurance, the insured is entitled to demand indemnity for his loss, and the company cannot escape from responsibility upon the ground assumed that the policy had become void, by reason of the alienation of the property. But the company insists it is relieved from the payment of the indemnity, because of the discharge of the insured under the law of insolvency, destroying mutuality of the contract. This objection is just as unsubstantial and technical as the other.

The policy with the references as before stated, constitutes the contract between the parties, and there is no provision in it, avoiding it on that account; and the principles of law applicable to the circumstances of the case do not warrant such conclusion. The effect of the law of insolvency is to discharge the applicant, for its benefit, from the payment of his debts and contracts, but not to exempt his debtors, or those liable to him, from the payment of their just obligations either to the trustee or the party himself. The insured, although insolvent, according to his obligation, it appears, paid the premium growing out of the policy, and there is no evidence that he ever interposed his discharge to shelter him from liability on that account. His application for the benefit of the law, and the proceedings thereunder, including the deed to the trustee, were matters of public record, and parties affected thereby must be considered as having knowledge thereof. *Manahan & Gorman vs. Sammon & Thurston*, 3 *Md.*, 473.

If the company had no *actual* notice in such a contract as this, the fact of its receiving the premium from the insured, subsequent to his application, although before his final discharge, operated as a renewal of it, and the company from

the receipt of the consideration incurred the consequent obligation to pay the indemnity in case of loss. Under such circumstances it is *estopped* from making such defence.

The discharge of the applicant, although subsequent to this, related back to the time of the application and only affected debts or contracts then existing. Upon the same principle, the *insured* by the payment of the premium, after his application, renewed the contract and recognized his obligation thereunder, and is *estopped* from setting up his discharge, to exonerate him from liability under it. If this were a contract affected by the proceedings in insolvency, the equitable doctrine of *estoppel in pais*, applied to the mutual and reciprocal acts of the parties, done in good faith and untinctured with fraud, in pursuance of the contract, would preserve the integrity of the contract and compel its performance by the company and the insured. Otherwise, the *bona fide* contract between the parties, with mutual and dependent considerations would be defeated; and the company, in this case, would be absolved from its obligation, after the occurrence of the fire to indemnify the insured, although it had received the premium from the insured as the consideration therefor.

Whilst it is the policy of the law to give to these insurance companies, as useful and beneficial institutions, ample protection, against inequitable claims, they must at the same time be held amenable, for the payment of all just demands. Their own interests, as well as that of parties dealing with them, require the exclusion of all mere technical considerations on either side, and the utmost good faith in maintaining the rights of both parties. See *Frost vs. Saratoga M. F. Ins. Co.,* 5 *Denio,* 154; *Viall vs. Genessee M. Ins. Co.,* 19 *Barbour,* 440; *Leathers vs. The Farmers' M. Ins. Co.,* 4 *Foster,* 259; *Burbank vs. Rockingham M. F. Ins. Co.,* 4 *Foster,* 550; *Bouvier vs. Connecticut Life Ins. Co.,* 23 *Conn.,* 244.

The contract of insurance to bind both parties whilst it binds the one must be obligatory on the other. Whilst the company is bound to indemnify the insured in case of loss, the payment of the premium by the insured is indispensable.

One is the consideration of the other, and *quid pro quo*—they are mutual and dependent one upon the other, and if one is invalid so is the other—if the one is obligatory so is the other. If the company had the right to and did receive the premium as stated from the insured, it necessarily incurred the resulting obligation to indemnify the insured in case of loss.

The company took no steps to abandon the policy, but received the required premium, and it must be presumed was satisfied to continue the policy so long as this was the case; and made its *election* to do so. There is no evidence that it ever offered to return the premium received after *actual* notice of the transfer of the property and the discharge of the insured in insolvency. Under these circumstances, creating a fair and *bona fide* contract with reciprocal considerations, the principles of construction applicable to contracts, and the acts of parties thereunder, require its performance; and in addition to this, it is but sheer justice to hold the company *estopped* from making such defence and as waiving such objection. I take it, the policy was not made void by the alienation, nor necessarily destroyed, or rendered ineffectual by the discharge of the insured under the insolvent law. If the appellant held an insurable interest in the property, at the issue of the policy and at the time of the fire, as before stated, and had paid the premium, according to the terms of the policy—if the appellee received the premium for the insurance, it was not competent for the company under the circumstances disclosed by the testimony to avoid its responsibility, by reason of the discharge of the insured in insolvency.

If the jury found the facts in the first bill of exceptions, the appellant was entitled to recover, and his prayer should have been granted and the appellee's refused.

The second bill of exceptions becomes immaterial.

According to my judgment, with great deference to the different views of the majority of my brethren, who sat in this case, the judgment below ought to be reversed, and a new trial ordered.