**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PILAR G. LUNTAO,
Plaintiff-Appellant,

v.

No. 97-2415

EQUITABLE LIFE ASSURANCE SOCIETY
OF THE UNITED STATES,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-96-439-DKC)

Submitted: August 18, 1998

Decided: September 8, 1998

Before HAMILTON and LUTTIG, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert K. Goren, GOREN & WOLFF, L.L.C., Rockville, Maryland,
for Appellant. Ruth Atkinson Lusby, RUTH ATKINSON LUSBY,
P.A., Towson, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Pilar G. Luntao filed this action against the Equitable Life Assurance Society of the United States after Equitable rescinded her disability insurance policy. Luntao appeals the district court's order denying her motion for summary judgment and granting summary judgment in favor of Equitable. Finding no error, we affirm.

I.

In the summer of 1992, Luntao met with Domingo C. Pamulaklakin, an Equitable agent, to apply for disability and life insurance policies. During this meeting, Luntao completed an informal form which required her to provide personal information, including her medical history. Pamulaklakin told Luntao that her handwriting on the form was too messy and had her sign a blank formal application, stating that he would later complete the application using information Luntao had previously provided. It is undisputed that Pamulaklakin and his manager, Patrick Silvera, later completed the application form, which contains none of Luntao's handwriting other than her signature.

The application, as completed, contained the following questions and answers relevant to this appeal:

> QUESTION:  Name and address of your personal physician (If none, so state).
>
> ANSWER:  Dr. Prospero Flores/Providence Hospital Dr. Edward Rankin
>
> QUESTION:  Date and reason last consulted if within the last five years.

2

ANSWER: Routine physical

QUESTION: What treatment was given or recommended.

ANSWER: None - excellent health.[1]

QUESTION: Have you within the last seven (7) years
been treated for . . . any disease or disorder
of the muscles or bones, including the back
. . . ?

ANSWER: No

Luntao claims that, in filling out the application, Pamulaklakin omitted pertinent medical history relating to prior injuries she had suffered. Specifically, Luntao maintains that she informed Pamulaklakin of previous treatment she had undergone in connection with back problems within the past seven years. In addition, Luntao states that Pamulaklakin was aware of a 1988 application which Luntao submitted to Equitable, in which she disclosed that she sustained a cervical strain of the back in August 1986, that she received treatment from a Dr. Edward Rankin, and that she was taking medication for pain relief.[2]

In processing the application prepared and submitted by Pamulaklakin, Equitable did not refer to Luntao's 1988 application, even though Equitable's representative responsible for processing the application was aware of its existence.[3] However, Equitable did telephone Luntao and ask her whether the application form was accurate. Luntao responded affirmatively, believing that the medical information she provided Pamulaklakin had been included on the actual application.

Equitable issued the disability insurance policy on September 8, 1992 and delivered it to Luntao at a later date. [4] At the time Equitable

_____

[1] J.A. at 33.
[2] Luntao withdrew this application prior to Equitable's final determination.
[3] See J.A. at 184-85.
[4] The parties dispute the date Luntao received the policy. Equitable claims it was delivered on October 31, 1992, while Luntao maintains she

3

delivered the policy, Luntao signed, but did not date, delivery receipts and an Amendment to the Application which reflected a change in the type of policy that issued. In addition, Luntao did not remove the policy from the folder. She merely put it away, without reading it or the attached completed application form.

In October 1993, Luntao suffered neck and back injuries, and in December 1994, applied for disability benefits. Equitable initially approved the claim and began paying monthly benefits. Thereafter, Equitable received Luntao's medical records, which revealed a history of neck and back injuries beginning in 1983. Upon reviewing Luntao's medical history of back problems, which was not included on her insurance application, Equitable determined that, if it had known of Luntao's prior back injury, it would not have issued the policy. By letter dated September 7, 1994, Equitable rescinded the policy on the ground that pertinent medical history was not disclosed on the policy application.

Luntao filed suit in Maryland state court, seeking recovery of benefits under her disability insurance policy. Equitable removed the case to the United States District Court for the District of Maryland and counterclaimed. After both parties filed motions for summary judgment, the district court entered judgment in favor of Equitable, finding that, even if the application form was blank at the time Luntao signed it, she negligently failed to read the policy and notify Equitable of any misrepresentations. Therefore, Luntao was an instrument of the fraud against Equitable, and the policy was void and subject to rescission. This appeal followed.

II.

We review the district court's granting of summary judgment de novo.**5** Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

_____

did not receive it until January 1993. This factual dispute is not material to the disposition of this appeal.

**5** **See United States v. Leak**, 123 F.3d 787, 791 (4th Cir. 1997).

4

any material fact and that the moving party is entitled to judgment as a matter of law."[6] The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party."[7] With this in mind, we affirm the district court's determinations.

A.

First, Luntao contends that the district court erred in determining that her failure to read the policy constituted negligence, and therefore, rendered her a participant in the fraud against Equitable. Luntao argues that she took every reasonable action within her ability to disclose to Equitable the nature of the risk it was assuming. First, she claims that she provided Pamulaklakin with accurate information regarding her medical history. Second, she references her 1988 application policy with Equitable, in which she fully disclosed her 1986 back problems. Third, she contends that she was tricked into signing a blank application and was not provided with the policy until weeks or months after meeting with Pamulaklakin. Finally, she argues that the outcome of this case would be no different even if she had read the policy because Equitable's policy instructions were to contact Pamulaklakin, the same agent who committed the misrepresentation in the first place. We disagree.

Maryland case law regarding misrepresentations of an insured's health is clear and well-established. In Globe Reserve Mutual Life Insurance v. Duffy,[8] the Court of Appeals of Maryland held that:

> if false answers be written in the application by the agent with the knowledge of the assured, the latter becomes an accomplice, and both perpetrate a fraud upon the company. In such a case it is obvious that a recovery could not be permitted upon a policy thus procured; and so, where false answers have been written by the agent without the knowledge of the assured, but the latter has the means at hand to discover the falsehood and negligently omits to use them, he

_____

6 Fed. R. Civ. P. 56(c).
7 **Shaw v. Stroud**, 13 F.3d 791, 798 (4th Cir. 1994).
8 25 A. 227 (Md. 1892).

> will be regarded as an instrument in the perpetration of the fraud, and no recovery could be had on the policy .[9]

More recently, in <u>Serdenes v. Aetna Life Insurance Co.</u>,[10] the Court of Special Appeals of Maryland stated that:

> [i]t is immaterial that it is the agent who inserts false statements about material matters in an application for insurance, because <u>if the assured has the means to ascertain that the application contains false statements, he is charged with the misrepresentations just as if he had actual knowledge of them and was a participant therein.</u>[11]

In the instant case, it is undisputed that Luntao's application for disability insurance contained material misrepresentations and that Equitable would not have issued the policy had it known of Luntao's medical history.[12] It is further uncontested that Luntao had the means to discover the misrepresentations and failed to do so. As Luntao testified at her deposition, upon receiving the policy, she "just put it at the side of the cupboard"[13] and did not read it until after she injured herself.

Not only did Luntao have the means to discover the misrepresentations, but she had an obligation to read the policy. When Luntao received the policy, she signed a Delivery Receipt and an Amendment to Application. Her signature was to indicate that she had read the policy and that the statements and answers in the application were true and complete. The face of the policy also stated, in bold capital letters, that Luntao had ten days to examine the policy, during which time she could void it.

_____

[9] **Globe Reserve Mut. Life Ins. v. Duffy**, 25 A. 227, 228 (Md. 1892) (emphasis added) (citations omitted).

[10] 319 A.2d 858 (Md. App. 1974).

[11] **Serdenes v. Aetna Life Ins. Co.**, 319 A.2d 858, 863 (Md. App. 1974) (emphasis added) (citations omitted).

[12] **See** J.A. at 581.

[13] **Id.** at 437.

Luntao concedes that she has been unable to locate any decisions from Maryland in which the courts expressly recognized that Duffy was not controlling in all cases.**14** Applying Duffy and Serdenes to the facts in the instant case, we agree with the district court that Luntao's failure to read the policy constituted negligence. Thus, the district court correctly determined that the misrepresentation was properly imputed to Luntao and that the insurance policy was never valid.

B.

Next, Luntao contends that, even if the district court correctly determined that her failure to read the policy established her participation in the fraud, there was evidence that Equitable's reliance on the misrepresentations was unjustified. First, Luntao claims that Equitable negligently failed to examine her 1988 application, which contained a complete disclosure of her back problems. Second, Luntao argues that Equitable's reliance was unjustified because her 1992 application stated that she had received treatment from a Dr. Edward Rankin ("Rankin"). Had Equitable consulted a physician directory, Luntao contends it would have discovered that Rankin was an orthopaedist, and thus provided an indication of her previous back problems. Finally, Luntao claims that a jury could properly determine that Equitable was aware of the misrepresentations because Pamulaklakin had a history of falsifying applications. We disagree.

With regard to Luntao's first claim, "Maryland law imposes a heavy burden on applicants to provide correct information on their application. The duty to investigate . . . only exists in extraordinary situations when the insurer is on notice that some type of investigation is necessary."**15** There is nothing in Luntao's 1992 application that would have given Equitable a reason to review her prior application. That application stated that she was in "good health" and had only consulted doctors in the previous five to seven years for routine

_____

**14** See Appellant's Br. at 31-34. Luntao cites several cases from outside this circuit in which courts have adopted a more lenient posture regarding misrepresentations of an insured's health. However, the law of Maryland is clear and applicable in this case.
**15** Clemons v. American Cas. Co. , 841 F. Supp. 160, 167 (D. Md. 1993) (internal citations omitted).

7

examinations. Equitable later verified this information in a telephone call to Luntao. In addition, upon receiving the policy, Luntao signed receipts and an Amendment to the Application indicating that the information contained in her application was true and complete. Thus, we do not believe that Equitable should have been on notice that an investigation was necessary.

Second, Equitable presented evidence that its underwriting department did not utilize, and did not have, a physician directory.[16] Even if the department did utilize such a directory, there was no indication on Luntao's application that any of the doctors she listed were specialists, which might have raised a suspicion of health problems.

Finally, Luntao's accusation that Pamulaklakin had a history of falsifying insurance applications is without merit. As the district court stated,

> [a]ssuming arguendo that [Luntao] is accurate in her claim that Equitable eventually became aware of a scheme by Mr. Pamulaklakin to earn commissions by obtaining insurance for clients without regard to their medical history, there is no . . . evidence, that Equitable was aware of any such scheme prior to the issuance of the policy to [Luntao].[17]

Therefore, we decline to reverse the district court's determinations on these grounds.

III.

Based upon the foregoing, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

_____

[16] See J.A. at 183.

[17] Id. at 579.

8