## Lewis J. Powers *vs.* Amaziah Mayo.

M. agreed in writing to convey to P. a piece of land and to take in part payment certain stock at its par value, relying on P.'s representations that it was worth par. The stock had at the time no market value, the last sales of it having been made several months previously for ninety-five cents on the dollar of par value. Two months after this contract it became known for the first time to the directors of the company, and a month later to the public, that the stock was then and for at least a year prior to the contract had been worth not more than ten cents on the dollar of par value. *Held*, that in the absence of any fraudulent intent or purpose by P., he was entitled to specific performance of the contract.

Bill in equity setting forth that the respondent was seised of a parcel of land in Springfield on which he had partially built a dwelling-house, and that on April 29, 1865, he made to the complainant a proposal in writing to complete the premises himself, according to a specification set forth therein, to sell them to the complainant complete, for fourteen thousand one hundred dollars, and to "take in payment as follows : 8 shares Am. Mach. Wks. stock, $800 ; D. L. Harris' indorsement Chapin's notes, $6000 ; leaves on mortgage, $6000 ; cash on acc't, $1300 ; total, $14,100 ; " " the house to be yours [the complainant's] as soon as this proposition is accepted ; " and that the complainant accepted it the same day by an indorsement in writing upon the same paper ; that the respondent thereupon completed the premises, but with certain alterations from the

specification, which, together with their cost as affecting the original contract price, were matter of oral agreement between the parties; that the complainant took possession, with his family, and has ever since continued in occupation, has paid all taxes assessed on the premises since the date of the agreement, has expended two thousand dollars in improvements, has paid to the respondent one thousand dollars in cash, and transferred to him two notes of one N. Chapin indorsed by D. L. Harris for six thousand dollars (which cash and transfer were accepted by the respondent in partial payment under the contract), and has always been ready and willing to complete his payment to the respondent under the contract on receiving from him a proper deed of conveyance of the premises. The bill further alleged that the complainant from time to time after the completion of the premises applied to the respondent for a settlement, and on February 20, 1866, (previous to the commencement of this suit on the same day,) tendered to him eight shares of the American Machine Works, properly assigned to him, and the complainant's promissory note for six thousand dollars secured by mortgage, " the payment so tendered being all there is due from the complainant to the respondent in the performance of his part of said agreement," and demanded of the respondent a deed of the premises, which the respondent thereupon refused to give, pretending " that said agreement was procured by fraud, that the stock of the American Machine Works at the date thereof was worthless, and that the complainant was knowing thereto." The prayer of the bill was for a decree to compel specific performance of the contract and a conveyance of the premises by the respondent.

The answer admitted the making of the contract, the completion of the premises and the possession of them by the complainant, in pursuance thereof, and the cash payment and transfer of the Chapin notes, substantially as set forth in the bill; but it alleged that a larger amount of cash payment was due from the complainant, by reason of the alterations and the oral agreements relating to them, than he had ever tendered, and that the respondent was ready and willing to convey the premises upon

receipt of such larger cash payment, and of the complainant's note for six thousand dollars, secured by mortgage, and of the further payment, in cash, by the complainant, of eight hundred dollars with interest from the time of his first possession under the contract, in the stead of the eight shares of the American Machine Works; for, it alleged, " at the time said contract was made, the complainant represented that those shares were well and fully worth their par value or amount, to wit, the sum of eight hundred dollars, and that the same was just as good as and equivalent to cash; that the respondent had no knowledge of said stock, nor of the value thereof, and made said contract in the full faith and confidence, based upon said representations, that said stock was well worth the amount named in said contract : whereas, in truth and in fact, said stock was not at that time worth its par value, nor said amount of eight hundred dollars, but said corporation was in fact insolvent, although its insolvent condition had not become known to the public, nor to the respondent, and did not so become known to the public or to the respondent until after the complainant had taken possession of said premises and made the payments hereinbefore admitted to have been made; and that, before said complainant had offered to transfer said stock to the respondent, the insolvency of said corporation did become known to the public, and said shares became and were absolutely of no value, and the shareholders of said corporation were also liable for the unpaid debts of the corporation."

Issue was joined on the answer; and the case was referred to a master, to state an account between the parties as to the alterations in the premises and their price, which was matter of oral agreement; and " also to report in full the evidence relating to the representations, if any, made by the complainant at tne time of the agreement to transfer the shares of the American Machine Works, as to their value; also the actual and market value of said shares at the date of said agreement, and their value at the date of the tender, and when, if ever, any change in the market or supposed value occurred."

By the evidence set forth in the master's report it appeared

that the parties had an interview in the early part of April, 1865, at which there was talk between them of a sale and purchase of the property, and the complainant then said that he should wish to pay the eight shares of the American Machine Works as part of the price, and that he considered them worth par, but referred the respondent, if he had any doubt about their value, to Frederick S. Bailey, who was clerk and a director of the company; that the parties had no other interview until April 29, when the written proposal of the respondent was made, as recited in the bill, and was accepted by the complainant; and that the respondent then said that he had made no inquiries about the stock and would rather add eight hundred dollars to the amount to remain on mortgage than take it. The respondent testified that, at this second interview also, the complainant assured him that the stock was worth par, and referred him to Mr. Bailey to find out about it; and that he was induced solely by these representations of the complainant to agree to take it.

By the testimony of Mr. Bailey it appeared that in April 1865 the stock had no market value, for that the last sale of it prior to that time was in June 1864, when some was sold for ninety-five dollars per share, the par being one hundred dollars; that in the spring preceding this sale fifteen thousand dollars of new stock was subscribed for and paid in, at par, increasing the capital stock from eighty-five thousand to a hundred thousand dollars; that in April 1865 it was known in the community that the business of the company was such that it would not make so much money as it had done in former years; but that its business credit was then good; and that the directors were not aware that the company " had lost anything of its capital" until in June 1865 the superintendent made a report to them and they found that the liabilities so far exceeded the assets that the intrinsic value of the stock was then, and for a year at least previous to April had been, not more than ten cents on the dollar, and whether or not it was anything at all depended on their collections of debts owed them in the southern states, contracted in 1860; that in July 1865 this condition of the company became notorious; and that it was " not much changed" in Feb-

ruary 1866.   And the respondent testified that at the time the complainant tendered him the stock in February 1866, he " was satisfied that it was not worth anything," but " knew nothing about the stock except from common report, which was that it was worse than nothing."

The master in his report computed and stated a balance as due from the complainant, and added to this computation these words : —

" The above statement leaves out of the account the eight shares of stock of the American Machine Works.   Upon the evidence in the case I should find that the complainant is entitled to have eight hundred dollars deducted from the balance named, because of his readiness to assign said stock to the respondent and the respondent's contract to receive the same instead of eight hundred dollars ; whereby the true balance due the respondent this day upon an assignment of said stock to him would be," [here followed a second computation.]

The respondent excepted to " so much of the master's report as indicated a finding or opinion of the master as to the rights of the parties in relation to or growing out of the stock," as being outside of any authority conveyed in the order of reference to the master ; and the case was reserved by *Chapman*, J., upon the pleadings, master's report and exception thereto, for determination by the full court.

*A. L. Soule*, for the respondent, having in his brief suggested points on which he proposed to argue that the complainant was not entitled to a decree for specific performance of the contract set forth in his bill, nor to a decree for the conveyance of the real estate to him on any terms, was stopped by the court ; and after hearing argument on the question the court ruled that in view of the pleadings, and of the averment in the respondent's answer of willingness to perform the contract, and of the reference to the master, and of the fact that neither the complainant nor the respondent excepted to · any part of the master's report other than as to the stock, that question was the only one open in the case, and argument must be confined thereto ; whereupon the respondent cited, as to that question, *McRae* v. *Carrington*

1 McLean, 50; *Mechanics' Bank of Alexandria* v. *Lynn*, 1 Pet 376; *Cathcart* v. *Robinson*, 5 Pet. 271; *Richmond* v. *Gray*, 3 Allen, 25, and cases there cited.

*G. Wells*, for the complainant, cited *Mixer* v. *Coburn*, 11 Met. 559; *Park* v. *Johnson*, 4 Allen, 259; 1 Story Eq. §§ 197, 200; *Franklin* v. *Greene*, 2 Allen, 519; *Tryon* v. *Whitmarsh*, 1 Met. 1; *Pearson* v. *Howe*, 1 Allen, 207; *Irvin* v. *Gregory*, 13 Gray, 215; *Wallis* v. *Glynn*, 19 Ves. 381.

HOAR, J. The plaintiff seeks by his bill to enforce the specific performance of a contract in writing for the conveyance of real estate, with buildings upon it which the defendant agreed to finish according to the specifications of the contract. He avers that the defendant finished the buildings accordingly, except so far as it was orally agreed that certain work required by the contract might be omitted, with a corresponding deduction from the price to be paid; that he has received possession of the estate, and has performed or has been ready and now offers to perform all that the contract called for on his part.

The defendant admits the making of the contract, that the plaintiff has in part complied with the terms of it, and that possession of the estate has been given to the plaintiff in conformity with it. He alleges his own readiness to convey the estate to the plaintiff, provided he will do and perform what in equity he ought to do and perform in order to the further and complete execution of the contract, especially in making certain payments of greater amount than in his bill he admits to be due, and in paying a part of the consideration in money instead of by a transfer of stock.

The case was sent to a master to examine and report upon the facts in dispute; and the only exception taken by either party to his report is as to his finding of the rights of the parties in relation to the stock which the contract requires the plaintiff to transfer as part of the consideration, and which the defendant objects to receive.

Upon this state of the pleadings, there can be no doubt that the plaintiff is entitled to a decree for the specific performance which he seeks. The contract is admitted, and the defendant

consents to perform it. The only question remaining is upon the terms and conditions of performance which equity will require.

In the first place, in regard to the parol variations from the contract, which the plaintiff has alleged, the defendant does not, in his answer, object to the enforcement of the contract on account of them, but merely denies the accuracy of the plaintiff's statement of the amount. The master's report has settled the amount in controversy. The plaintiff alleged that he agreed to give up a part of the work to be done in finishing the house, and that he was to have a corresponding deduction from the purchase money. To this the defendant agrees, but claims that the amount of the deduction is less than the plaintiff's computation makes it. This could not prevent the enforcement of the written contract, because it is in effect an agreement by the defendant to receive the plaintiff's waiver of a part of his rights under the written agreement in lieu of a payment. It is a satisfaction *pro tanto* of a part of the plaintiff's obligation.

The next point is the claim of the defendant that certain extra work, not provided in the written contract, but done by him at the plaintiff's request, should be paid for before he should be compelled to convey the estate. It is very questionable whether this could be required as a condition of the specific performance, being a separate and independent agreement; but this becomes unimportant, as the plaintiff consents that it may be allowed, and the master has reported the amount due.

The delay of the plaintiff in executing his part of the agreement, which has been insisted on in the argument, cannot avail as a defence to the bill, for two reasons : first, it is not set up as a defence in the answer; and secondly, it appears by the report that the agreement has been partly performed, and the delay in completing it has been in part owing to the inability of the parties to ascertain and agree upon the items of account, but chiefly to the refusal of the defendant to accept a transfer of stock which was specified in the contract as a part of the consideration for the conveyance.

The only other question is that which relates to the stock

Powers *v.* Mayo.

By the contract the defendant was to receive in payment of eight hundred dollars of the purchase money, eight shares of the stock of the American Machine Works, which the plaintiff avers that he has always been ready and has offered to transfer; which is not denied in the answer. This stock is now nearly worthless, and the defendant claims that he should be paid in money.

We think the facts found by the master do not support this claim. The ground taken in the answer is that the defendant agreed to take the stock, trusting wholly to the representation of the plaintiff that it was as good as cash. The proof shows that it was then really worth, in intrinsic value, no more than it is now; that its value depended wholly upon the collection of some doubtful debts; and that the plaintiff made the representation alleged. But it does not appear, and it is not set up in the answer, that the plaintiff did not believe his representations to be true, or had any fraudulent intent or purpose. On the contrary it appears that he referred the defendant to the secretary of the company for information as to its condition; and one witness says, offered a week's time for that purpose. The defendant then preferred to have cash instead of the stock, but the plaintiff was not willing to trade unless he would take the stock. The last previous sale of the stock had been nearly at par. The defendant made no inquiries, signed the contract, and proceeded for months in its execution, adding new stipulations, receiving payments, and making no offer to rescind the entire contract; indeed, putting it out of his power to restore the plaintiff to his original condition. We think it appears that the stock would have sold for something in the open market at the time the contract was made. Under such circumstances, in the absence of fraud, the reliance by the defendant upon the plaintiff's opinion of the value of the property which he agreed to take is no sufficient reason for rescinding or modifying the terms of the bargain, although his reliance may have been misplaced. The plaintiff is, therefore, entitled to a decree in conformity with the master's report.