POLSON ET UX. *v.* MARTIN ET UX.

[No. 235, September Term, 1961.]

*Decided April 17, 1962.*

*Motion for rehearing en banc filed May 28, 1962, denied July 2, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HORNEY, MARBURY and SYBERT, JJ.

*H. Robert Venables,* with whom were *West & Venables,* on the brief, and by *John Breckinridge,* with whom were *White, Sorrell & Williamson,* also on the brief, for appellants.

*Samuel J. DeBlasis,* with whom were *DeBlasis & Kahler* and *Wilfred M. Dyer, Jr.,* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

This appeal is from a judgment n.o.v. entered after the jury returned a verdict in favor of the appellants (plaintiffs below). The suit arises out of the purchase by the appellants of a new home which had been completed and offered for sale by the appellees (defendants below), in an action in deceit based on allegations of misrepresentation, concealment, and fraudulent non-disclosure.

In passing upon motions for directed verdicts or judgments n.o.v., the evidence and all logical and reasonable inferences deducible therefrom must be considered in the light most favorable to the plaintiff. This principle is too well established to require the citation of authorities.

The evidence disclosed by the record shows that the appellee, William P. Martin, had been engaged in the occupation of developing and building homes in the Forest Heights area of Prince George's County for more than twelve years, and had been in the construction business prior to that time. In January 1955 the appellees purchased a building lot located at what became premises 291 Cree Drive, Forest Heights. At the time of purchase the topography of the lot was in a rough, natural state, composed of clay, sand, and gravel, with a ravine running through it that had been partially filled. The house was eventually built on filled dirt athwart the ravine.

The ravine contained a pipe which was apparent, but did not run through or onto the lot.

On August 16, 1956, Mr. Martin made application for a building permit to the building inspector's office in said county to build a house on the lot. The application and plans submitted therewith specified a design for the foundation or footings of the building to be twelve inches in depth and twenty-four inches in width. The minimum requirement in the county for residential construction was eight inches in depth and sixteen inches in width.

Some time thereafter the appellee, William P. Martin, began construction on the lot, digging footings to more than comply with the minimum county requirements, and provided, in addition thereto, three steel reinforced $5/8$ inch rods every four feet in the concrete for the foundation. Prior to the construction of the footings he tested the soil in the customary way to determine the type of footings required. These footings, when poured, then were inspected by Mr. Ellis, an inspector from the building inspector's office, and approved by him. The footings, as Ellis recalled them in his testimony at the trial, met the minimum requirement of eight by sixteen, but according to other witnesses were at least twelve by twenty-four, or in places wider.

The house was completed about the 20th of December, 1956, and was put on the market for sale to the general public. It remained unsold for a period of approximately eight months when it was sold to the appellants. There had been no meeting or negotiations between the appellants and the appellees until June of 1957 when the appellant, Lonnie C. Polson, a brick contractor, in response to a "For Sale" sign, came upon the premises to inspect the house. From this time in June 1957 the appellants made frequent visits to and freely inspected the house and grounds without interference by the appellees prior to the execution of the contract on July 31, 1957. The appellants stated that they were satisfied with the house. During this period of negotiations the appellants demanded that the appellees guarantee the house, and that the contract contain a provision to that effect. This demand by the appellants was refused by the appellees. The appellants claimed

that the appellees stated that this would not be necessary because the house was built according to the Prince George's County Building Code. The appellants took possession of the property in September 1957 and thereafter in the Spring of 1958 began extensive improvements on the premises by adding a large garage and driveway. This activity necessitated the use of heavy building equipment, such as tractors, bulldozers, and loaders.

Subsequently, in February or March of 1958 the appellants began to notice some hairline cracks in the basement of the house. Up until this time the appellants had no complaints about the house. The cracks got progressively worse after a lapse of time. Expert witnesses who testified at the trial differed as to the cause of the cracks. The appellants' experts testified that the cracks in the house were due to settlement, while the appellees' expert testified that in his opinion they were caused by vibration in the use of heavy equipment on the adjoining grounds after the house was completed.

The appellants, in seeking reversal of the judgment n.o.v. entered by the trial court, make two claims: I, that when the appellants, during the negotiations demanded that the .contract contain a provision guaranteeing the house, and the appellees refused, stating that this was unnecessary because the house was built according to the Prince George's County Building Code, there was a verbal misrepresentation of a material fact which amounted to fraud in the procurement of the sales contract; and II, that the appellees' failure to advise the appellants that the dwelling had been built on filled ground amounted to concealment of a material fact in the procurement of the contract.

The response made by Mr. Martin, as testified to by the appellants, in answer to a request for a guarantee was: "No, I won't give you a guarantee. You won't need one. It is built according to the Prince George's County code." We think this statement by him was not a representation of fact on which a prospective buyer was entitled to rely. In the case of *Milkton v. French,* 159 Md. 126, 132, 133, 150 Atl. 28, the home buyer was told that he would be perfectly safe in regard to the concrete in the house, its roof, and the rest of the construc-

tion. This Court, through Judge Parke, said that such statements were merely puffing, and said further that the representations as to the dryness of the basement did not constitute fraud "since the quality or condition affirmed was not a false past or present fact," because the roof did not leak or the cellar become damp until six months after the sale, and a year after the completion of the house, and since, moreover, there was no evidence that the statement was made without the belief at the time that it was true, or without reasonable grounds for believing it to be true. The Court further stated that the filing with the building inspector of plans and specifications to secure a permit for its construction was not a representation or warranty on the part of the owners that the building was constructed in accordance with such specifications. The Court, on pages 136 and 137, goes on to say:

"The plaintiff bought a new but finished house, about whose quality or condition the owners refused to give any warranty, but one of them stated that the purchaser would be perfectly safe on the concrete, roof, and everything else of the construction, because he had built it himself. It appears from the record that at the time of this statement the vendors knew nothing to the contrary, and that there is nothing omitted from the statement which was then known to the vendors and whose omission made this statement false or misleading. So, the statement is free of fraud and is not a misrepresentation. *Brager v. Friedenwald,* 128 Md. 8, 32. As the vendors carefully protected themselves by declining to enter into a warranty of the quality or condition of the building, it would seem to have been quite obvious to the vendee that the vendors insisted and intended that he should buy at his own risk. If the plaintiff, under these circumstances, chose to contract without further inquiry, inspection, or warranty, he must accept the situation created by his own choice, since the vendors here did not nullify their express refusal to warrant by a clear, explicit, and direct fradulent statement that the

buildings were of a certain specific quality or condition. *Bower on Actionable Misrepresentation,* 209, 210, 1 *Bigelow on Fraud,* 473; *Bywater v. Richardson* (1834), 1 A. & E. 508; *Ward v. Hobbs* (1878), 4 App. Cas. 13, 20, 21; *Powers v. May,* 97 Mass. 180; *Jones v. Williams,* 24 Beav. 47; *Ramstead v. Allen,* 85 Md. 482, 486, 488."

In the instant case the appellees are claimed to have made the statement that the house was "built according to the Prince George's County code." We may paraphrase Judge Parke's opinion in *Milkton* and say that the statement was not concerning a false past or present fact. Here the building code (as testified to by the building inspector) though not adopted by the Prince George's County Commissioners, was complied with as to the footings, and there was no evidence that the statement was made without an honest belief in its truth, or without reasonable grounds for believing it to be true. The filing of the application for the building permit did not involve a warranty or representation. The record discloses nothing which would indicate that the appellees had knowledge that the building code had not been adopted. As a matter of fact the vendors protected themselves by declining to enter into a warranty as to the soundness of the construction of the building, and it became apparent that the sellers intended that the purchasers buy at their own risk so that the appellants must accept the situation brought on by their own choice. There was no evidence of knowledge of the falsity of the representation on the part of the appellees, nor that it was made in reckless indifference to the truth. *Boulden v. Stilwell,* 100 Md. 543, 60 Atl. 609. See also *Fegeas v. Sherrill,* 218 Md. 472, 147 A. 2d 223, where vendors' statement that purchasers "could not go wrong" was not a representation of fact on which a prospective purchaser was entitled to rely; and *Wolin v. Zenith Homes, Inc.,* 219 Md. 242, 146 A. 2d 197, where a representation by agents of sellers that a house would be completed in a structurally sound condition and free of substantial defects did not amount to a misrepresentation.

As to the claim that the failure to inform the appellants

that the house had been built upon filled ground, and that this constituted a fraudulent concealment of a material fact, we find it to be without merit. Much of what we have said and the authorities quoted above with reference to the alleged misrepresentation apply with equal force to non-disclosure. In *Fegeas* Judge Hammond of this Court discussed many of the authorities applicable to concealment and non-disclosure, and stated the rule to be at pages 477, 478:

> "Unless the seller of real estate, because of fiduciary or other similar relations of trust, is under a duty to disclose facts as to the property known to him but not to the buyer, generally he need not do so, particularly if those facts may be ascertained by the buyer by reasonable inspection or investigation, and the transaction is at arm's length. 3 Pomeroy, *Equity Jurisprudence,* Fifth Ed., § 904, says: 'In ordinary contracts of sale, where no previous fiduciary relation exists, and where no confidence, express or implied, growing out of or connected with the very transaction itself, is reposed on the vendor, and the parties are dealing with each other at arm's length, and the purchaser is presumed to have as many reasonable opportunities for ascertaining all the facts as any other person in his place would have had, then the general doctrine already stated applies: no duty to disclose material facts known to himself rests upon the vendor; his failure to disclose is not a fraudulent concealment.' See 1 Black, *op. cit.,* Sec. 41; Restatement, *Torts,* § 551; 91 C.J.S. *Vendor and Purchaser* § 57."

In the instant case the pictures introduced in evidence as exhibits clearly show that the house had been built upon ground which must have been placed in the ravine by filling with dirt from some other source. This topographical information was certainly available to any prudent prospective purchaser, especially Mr. Polson, who had been engaged in the building business as a brick contractor. He and Mrs. Polson had made frequent inspections of the house and grounds, and

350

she, at least partially, relied upon his judgment in the purchase of the house and lot.

There was no fiduciary relationship between the contracting parties, and without doubt, the parties dealt at arm's length; nor do we find any fraudulent misrepresentation or concealment of a material fact which induced the appellants to enter into the contract. Consequently, the judgment must be affirmed.

*Judgment affirmed, with costs.*