RICHARDSON, Etc., et al. *v.* SCOTT

[No. 40, September Term, 1963.]

*Decided October 16, 1963.*

*Motion for rehearing filed November 13, 1963, denied December 2, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Robert C. Heeney* and *John F. McAuliffe,* with whom were *Heeney & McAuliffe* on the brief, for the appellants.

*John L. Schroeder,* with whom was *William D. Paton* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Aggrieved by the verdict of the jury in favor of the defendant and judgment thereon for costs by the Circuit Court for Montgomery County, the infant Sue Ann Richardson, by Russell Richardson, Sr., her father and next friend, and Mr. Richardson, individually, bring this appeal.

On September 8, 1960, Sue Ann, then two and a half years of age, was struck by an automobile driven by the defendant-appellee, Sue Anne Scott, age seventeen years, as a result of

which she suffered severe and permanent injuries. The accident occurred on Deer Park Drive in Gaithersburg, at about 7:30 p.m., on a clear, dry day in full daylight. Deer Park Drive was a hard surface black top road, beginning at Route 355 and proceeding east through a residential section in which the appellants lived. The road, on which the speed limit was thirty miles per hour, was estimated to be twenty-five or twenty-six feet wide by Mrs. Richardson, mother of the infant, and twenty-one feet in width according to Trooper Heddin of the Maryland State Police, the investigating officer. A grass shoulder two to three feet in width was on either side of the road. Adjacent to the grass plot on the south side of the road, and between it and the yards of residences, there was a hedge located between a point near the intersection with Route 355 and a point near, but beyond the place of the accident.

The appellee and her thirteen year old sister, Stephanie, left their home in Rosemont, approximately one half mile away from the accident scene, and proceeded to a restaurant in nearby Washington Grove. Appellee was driving a 1955 station wagon, and her sister was seated in the right front seat. They proceeded along Route 355 to Deer Park Drive where they made a right turn, and as they approached the area of the appellants' home, Sue Anne Scott was obliged to bring the car to a stop because "a lot * * * of children and Sue Ann Richardson" were in the street. She waited until the children were out of the street and then proceeded to the restaurant. Upon arriving there she discovered that she had neglected to bring any money, so she and her sister drove back to their home, again by way of Deer Park Drive. As they passed the appellants' home children were again observed and the little Richson girl was seen in her yard.

After obtaining the money, appellee began the return trip to the restaurant, again following the same course. She turned from Route 355 into Deer Park Drive at a speed of about five to ten miles per hour, she had gone about two hundred feet and had accelerated to a speed of twenty to twenty-five miles per hour when she first became aware of the presence of the infant appellant. There were no other children on or adjacent to the street at this time.

According to the appellee, the infant came out of a driveway from behind the hedge and was observed a few steps from the right front bumper, and then followed the impact. Her sister testified that as the car was gaining momentum she first saw something out of the corner of her eye, identified it as a child and screamed. The collision of the car with the child occurred at or about the same moment as the scream. Appellee applied the brakes at the moment of impact but her vehicle left no skid or tire marks on the road or on the grass plot. Furthermore, there were no marks on the automobile to indicate a collision had occurred. It continued approximately fifty feet beyond the point of impact.

The mother of the injured child stated her daughter had been playing with two little kittens in a driveway across the street from her home approximately fifteen feet from the roadway when, in response to a call from her older sister, she got up and left the kittens, walked toward the road and stopped on the grass. Mrs. Richardson testified she observed the accident while sitting in a chair inside the house but located in front of the door and facing out. She first saw the Scott car when it was about two car-lengths from her daughter. As the car continued forward it blocked Mrs. Richardson's view of the child. After the car had passed, she saw that the girl was lying on the grass plot beside the road in a doubled over position. Mrs. Hazel Bonham who lived adjacent to the Richardsons was not an eyewitness to the accident, but she heard a scream and immediately went to the scene where she found the infant lying on the grass shoulder.

An ambulance was summoned and Mrs. Richardson and her injured daughter left for Suburban Hospital in Bethesda just as Trooper Heddin arrived to investigate.

The contentions of the appellants concern alleged errors of the trial court (a) in denying their motion to strike out certain testimony of Mr. Scott, a witness for the defense, which they thought both inadmissible and prejudicial; (b) in refusing to grant their motion for a mistrial following several attempts, for purposes of impeachment, by appellee's counsel to ask Heddin, another defense witness, a question the court had

previously ruled improper; (c) in refusing to grant a directed verdict for the plaintiffs; and (d) in instructing the jury.

In the view we take of the case we need not consider these contentions which were made in retrospect of the whole case, for we think the record clearly shows that the appellants had failed to make out a prima facie case of primary negligence.

At the close of the plaintiffs' evidence and at the close of all of the evidence, the appellee moved for a directed verdict in her favor, but these motions were denied by the trial judges and the case was allowed to go to the jury, which returned its verdict for the defendant. The appellee argued in her brief that her motion for a directed verdict at the close of the whole case should have been granted. This appeared in appellee's answer to appellants' argument that a directed verdict should have been granted in the latter's favor. We think that under the evidence presented the trial court should have granted the defendant-appellee's motion for a directed verdict. *Sears v. B. and O. Railroad,* 219 Md. 118, 148 A. 2d 366. *Nocar v. Greenberg,* 210 Md. 506, 517, 124 A. 2d 757.

The established rule, frequently stated and applied by this Court, in passing on a defendant's motion for a directed verdict at the close of the whole case, is that any conflict in the evidence must be resolved in favor of the plaintiff, and that all of the plaintiff's evidence and that part of the defendant's evidence, if, any, which tends to establish the plaintiff's contention, must be taken to be true, together with all legitimate inferences fairly deducible therefrom. *Clough & Molloy v. Shilling,* 149 Md. 189, 199, 131 Atl. 343. See also *Flyer v. Del Borrell,* 227 Md. 545, 547, 177 A. 2d 865, and cases cited therein.

Both parties agreed that contributory negligence was not involved in this case. *State, Use of Taylor v. Barlly,* 216 Md. 94, 101, 140 A. 2d 173; *Miller v. Graff,* 196 Md. 609, 78 A. 2d 220. Thus, the decisive issue here is whether the appellee was guilty of any primary negligence which was a proximate cause of this accident.

In order to justify the withdrawal of the case from the jury the evidence must admit of no inference of negligence in the operation of the automobile by appellee. We find the evidence

in this case insufficient to admit an inference that the proximate cause of the injury was the driver's failure to exercise due care. Of course, a high degree of caution is to be exercised by the driver in a residential area where children are known to be. We have had several opportunities in the past decade to discuss this standard of care. *Wiedman v. Murray,* 231 Md. 237, 189 A. 2d 640; *Flyer v. Del Borrell, supra; Dorough v. Lockman,* 224 Md. 168, 167 A. 2d 129; *State, Use of Taylor v. Barlly, supra; Cocco v. Lissau,* 202 Md. 196, 95 A. 2d 857; and *Miller v. Graff, supra.*

The testimony in this case failed to show any act of primary negligence on the part of the appellee. The evidence only demonstrated that the driver, according to the testimony, was driving at a reasonable speed within the posted limit, and maintained a proper lookout. It is true that in some situations the driver might be negligent in going at less than the posted speed limit, but we do not think this is so here, nor is any contention made that the appellee was speeding under the circumstances.

The appellants claim that the little girl standing on the grass plot with a background of the green hedge must have been in plain view of the appellee and, therefore, the appellee should have taken proper action to avoid striking the child should she leave the place of safety and move either in front of or against the front portion of the car. Miss Scott had noticed Sue Ann on one prior occasion when the child, with other children, was in the street in the vicinity of her home. She had noticed the child in her own yard on a second prior occasion when she traversed the street. On the third occasion, when the accident occurred, seeing no children in the street and devoting her attention to the street ahead of her which was her primary duty, she, we think, can not be legally held to be negligent in not anticipating that the child, even if it had been seen by her as she approached, would either leave the grass plot and walk or run into the path of her car as she reached the entrance of the driveway.

There were no eyewitnesses to the actual impact other than the appellee and her sister, neither of whom saw any movement of the child until a split second before the impact and too late

to avoid the accident. Mrs. Richardson's view was blocked. She could not say whether her daughter moved into the path of the car, against its right side, or stood still on the grass plot. Nor did the neighbor, Mrs. Bonham, see the impact. Her role was not unlike the witness Thomas, in the *Flyer* case, *supra,* who had been cutting grass with hand cutters, his head down, at a distance of one hundred thirty to one hundred fifty feet when the impact occurred. The appellants appear to emphasize the fact that the child was found on the grass shoulder and not on the macadam immediately after the impact. Whether this was an attempt to draw the inference that the car actually went off the road and struck the infant appellant is not clear. We think the only legitimate inference is that the child was thrown back after being struck by the front bumper or fender, having suddenly exchanged a place of safety for one of peril. There simply was no evidence as to when the child reasonably could have been seen by the appellee, and thus no proof of an opportunity on her part to avoid the accident after the child left a place of safety.

We have determined there was a complete absence of legally sufficient evidence that the appellee was driving at an excessive speed, or that she was reckless or otherwise violated rules of the road, or that she could have avoided striking the child by the exercise of ordinary care.

*Judgment affirmed, with costs to appellee.*