SPENCE, ETC., ET AL. *v.* WILES

[No. 352, September Term, 1968.]·

*Decided October 8, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Samuel D. Hill*, with whom were *M. Michael Maslan* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellants.

The Court did not wish to hear from appellee.

*Phillips L. Goldsborough, III, John G. Prendergast, Jr.* and *Smith, Somerville & Case* on the brief for appellee.

MARBURY, J., delivered the opinion of the Court.

On January 20, 1966, an automobile driven by appellee, Chester Earl Wiles, struck and seriously injured the infant appellant, Ricky Spence. Charles Spence, individually, and as Ricky's father and next friend, brought an action for the damages arising from the child's injuries sustained as a result of the accident. A jury trial was held on September 20, 1968 in the Circuit Court for Baltimore County. The appellee moved for a directed verdict at the close of appellants' case, and the lower court granted it. After denial of a motion for a new trial and entry of judgment thereon in favor of the appellee, appellants noted a timely appeal to this Court.

The accident occurred at about 4:58 p.m. on Sollers Point Road in the Dundalk area of Baltimore County, in the block between Merritt Boulevard to the north, and Mornington Road to the south. At this location Sollers Point Road is a macadam surfaced two-way street running north and south, 30 feet wide. The northbound lane is 12 feet wide and the southbound lane 18 feet wide, the lanes being separated by a painted center line located 18 feet east of the west curb. Parking is permitted on the west (southbound) side of the road only. The street slopes downward for southbound traffic and the posted speed limit is 30 miles per hour. On the day of the accident the weather was clear and dry, and it was still daylight.

Mr. Wiles was proceeding in the proper southbound lane in his 1960 Corvair, driving his son home from

school. His testimony was that he had taken his foot from the gas pedal at the intersection of Merritt Boulevard where there was a car waiting to his left at a stop sign. He testified that he was proceeding at a speed of approximately 25 to 30 miles per hour. As he approached the midpoint of the block and was passing an automobile parked at the curb to his right, he first saw the infant appellant, as he darted into the road. Wiles stated that the boy was some 8 to 10 feet in front of the parked automobile. According to Wiles, he slammed on his brakes but the boy and the car collided, Wiles' testimony being that the boy ran into the right side of his automobile. Immediately after stopping, the appellee got out and found the child lying in the street about 10 or 12 feet in front of the parked car and slightly east of a line drawn parallel to its left side. There was general agreement that the impact occurred roughly in the middle of the block, some 70 feet south of Merritt Boulevard and 75 feet north of Mornington Road. There were no pedestrian street crossings anywhere in the vicinity of the accident.

Appellants produced several witnesses at the trial below. The infant Ricky, eight years old at the time of the accident, was unable to testify how the accident occurred. His older brother, Bobby (about twelve at that time), however, was on the east side of Sollers Point Road playing football. He testified that he had seen Ricky come from behind the No. 3000 house across the street, along a walkway to the north of that house. When Ricky was still behind a hedge on the 3000 property, he called over to Bobby to ask if he too could play football. Bobby didn't answer, so Ricky came out to the curb and looked up and down the street, then started to run across. Bobby then heard an approaching car with a sound like "starting out real fast," and turned to see the car strike Ricky, throwing him into the air. Bobby thought the right front center of the car was the point of impact. Bobby had been running out for a pass and had just caught the football as he observed the impact.

Dale Rothe, one of the other boys playing football with Bobby also testified, but he did not see the impact. He heard Ricky call over and thought that Ricky called over twice.

A neighbor, Mrs. Helton, who lived at 3002 on the west side of Sollers Point Road saw the impact from her second story window and thought the impact was with the right front of the automobile, but did not observe any of the circumstances leading up to the accident.

Another neighbor, Mrs. Rothe, of 2998 Sollers Point Road, testified she came out of her house immediately following the accident and saw Ricky lying in the street just south of the hedge between her house and 3000 Sollers Point Road. She saw a car parked at the curb in front of her house.

Officer Anthony J. Andrejak of the Baltimore County Police Department investigated the accident. He had been in the specialized Accident Investigation Division for two or three years before the collision, but he had received no formal training in this field. He found the Wiles car on skid marks, and he measured them, determining the longest skid mark to be 50 feet. A fellow officer photographed the car and the skid marks, and through Officer Andrejak these photographs were introduced into evidence. He was unable to determine at the accident scene which wheel had made the longest skid mark, but determined from the photographs he received a few days after the accident that it was the right front wheel. He remembered having talked with Lt. Charles M. Gross but denied having told Lt. Gross that the skid marks were overall marks made by both the front and rear wheels of the car. He claimed he could determine where the front wheel skid marks began but admitted they were overlapped or crossed by the rear wheel marks. Appellants attempted to qualify Officer Andrejak as an expert for the purpose of estimating the speed of the car from the skid marks, but a proffer of his testimony made for this purpose was refused by the trial judge.

Appellants called as a witness Lt. Charles M. Gross of

the Baltimore City Police Department. He had been a member of the Accident Investigation Division for twenty-one years, and commanding officer of that division since 1959. He had taken several courses in traffic safety and accident investigations, and done extensive reading in this field. He was qualified as an expert witness for the purpose of estimating speed from skid marks, without objection by the other side. Lt. Gross had made tests in July of 1966 to determine the coefficient of friction of the road surface where the accident occurred. Once he had determined this coefficient it was necessary for him to know the length of the skid marks made by Wiles' car. He testified that Andrejak told him that the overall length was 50 feet, so Gross deducted the 9 foot wheelbase of the car, and using 41 feet in a mathematical formula he calculated Wiles' speed at the time of the accident to be 29.755 miles per hour. He further testified that if the 50 feet measured were actually the length of the longest individual skid mark that the speed would have been 32.89 miles per hour. He also stated that these were calculations of the speed the automobile was traveling at the instant that the driver's foot hit the brake.

The first point we shall deal with is the refusal of the trial judge to allow Officer Andrejak to testify on speed as derived from the skid marks which he found. Appellants contend that the trial court's ruling in this regard amounted to reversible error. The rule is that before a witness is permitted to offer an expert opinion, it must be shown that he possesses both the necessary qualifications and also the factual information necessary to form such an opinion. *Hewitt v. Bd. of Censors*, 243 Md. 574, 221 A. 2d 894 (1966) ; *State Health Dep't v. Walker*, 238 Md. 512, 209 A. 2d 555 (1965). In this case Lt. Gross testified that it was necessary to know the coefficient of friction at the accident scene in order to calculate accurately the speed of a car solely from the skid marks. At the time Officer Andrejak made his estimate he did not know this coefficient and there was no evidence that he was aware of it at the time of trial. The qualifications

of a proposed expert witness are a matter for the trial court to pass upon in the first instance, and unless such ruling is clearly erroneous or a clear abuse of discretion it will not be reversed on appeal. *Nizer v. Phelps*, 252 Md. 185, 249 A. 2d 112 (1969) (concerning an officer of the Accident Investigation Division) ; *Continental v. Kouwenhoven*, 242 Md. 115, 218 A. 2d 11 (1966) ; *Yudkin v. State*, 229 Md. 223, 182 A. 2d 798 (1962). Here, Andrejak had been a member of the Accident Investigation Division for only two or three years; he was possessed of no special training besides on the job experience. He admitted that his judgment was "one of those on-the-spot things made at the scene without the aid of a graph." The trial court did allow Andrejak to testify as an expert witness on the manner of operation of the brakes on Wiles' car, noting the officer had previously been an automobile mechanic for some time. We see no abuse of discretion under these circumstances and decline to reverse the rulings of the trial judge.

Appellants contend that it was error for the trial court to direct a verdict for the defendant in an automobile case where there was evidence of excessive speed from which the jury could find negligence. They cite numerous cases supporting their statement that drivers cannot rely on a child's sudden running in front of a car to escape liability if the driver was operating his vehicle at an excessive rate of speed.

Even without Andrejak's testimony as to speed in this case, appellant contends that Lt. Gross' testimony was sufficient to allow the case to go to the jury. He relies on *Mulligan v. Pruitt*, 244 Md. 338, 223 A. 2d 574 (1966), and a line of cases similar to it. In *Mulligan* there was eyewitness testimony that the defendant was traveling thirty to thirty-five miles per hour in a twenty-five mile zone; defendant had observed children playing in the area; the infant plaintiff was at least twenty-eight feet beyond the front of a car parked on defendant's right, and the collision occurred on a shady, twisting, suburban street near the top of a hill. In *Miller v. Graff*, 196 Md.

609, 78 A. 2d 220 (1951), a four year old child was struck while crossing in the middle of the block. There was disinterested eyewitness testimony that the driver was traveling at forty-five miles per hour in a twenty-five mile zone, and that the driver had slammed on his brakes at least fifty-five feet before he struck the child. In *Lloyd v. Yellow Cab Co.*, 220 Md. 488, 154 A. 2d 906 (1959), a taxicab struck an infant plaintiff in the middle of a block. There was evidence that the driver was aware of children in the area, because two had crossed in front of his cab in that block. The taxicab driver testified he was moving at a speed of between twenty and thirty miles an hour. Another witness testified the cab was going "fast." The case went to the jury, which found for the defendant and this Court affirmed without deciding whether a directed verdict for the defendant would have been proper.

We are of the opinion that the instant case is controlled by the line of cases where a directed verdict has been granted on the basis of a lack of showing of primary negligence on the defendant's part. In *Richardson v. Scott*, 232 Md. 490, 194 A. 2d 288 (1963), the driver of an automobile was proceeding by her own estimate at a speed of from twenty to twenty-five miles per hour in a thirty mile zone, but she was aware of children in the area as only a short time before that same evening she was obliged to stop her car to allow children, including the infant plaintiff, to get out of the street. It is true, as appellant suggests, that Maryland law requires reduction of speed even below the posted limit when a special hazard exists with respect to pedestrians or by reason of highway conditions. Code (1967 Repl. Vol.), Article 66½, Section 211 (e). So that in some instances negligence might exist even if the driver were moving below the speed limit. However, in *Richardson* this Court concluded that such circumstances did not exist and held that a verdict should have been directed for the defendant. In *Alina v. Raschka,* 254 Md. 413, 255 A. 2d 76 (1969), the defendant driver testified he first saw the

infant plaintiff dart out from behind a hedge and into the street about two car lengths ahead. He testified he was moving at about twenty miles per hour and a police officer testified that Raschka's speed was not excessive. Raschka lived in the same block in which the accident occurred and knew that on prior occasions the infant defendant had played in the street. There was a school across the street from where the accident occurred and it was at a time (2:25 p.m. on October 13, 1966) when the school might well have been in session, yet in this case also a directed verdict for defendant was upheld. The distinguishing feature between these lines of cases is not the absence or presence of excessive speed but its absence or presence as a proximate cause of the injury complained of. To show merely excessive speed is ordinarily not enough to support an inference of negligence unless there is some further showing that this excessive speed is a direct and proximate cause of the injury. *Stevens v. Chandler Motor Co.*, 222 Md. 399, 160 A. 2d 772 (1960) ; *Cocco v. Lissau*, 202 Md. 196, 95 A. 2d 857 (1953) ; *Miller v. Graff, supra.* In the instant case Wiles was proceeding in the proper lane on a substantially straight urban boulevard; there were no weather conditions which might have made driving unusually hazardous. The mechanical condition of his automobile was not shown to require more than the ordinary degree of watchfulness. In both *Henkelmann v. Insurance Co.*, 180 Md. 591, 26 A. 2d 418 (1942) and *Rush v. Lloyd*, 221 Md. 7, 155 A. 2d 666 (1959) the accidents were said by plaintiffs to have occurred at pedestrian crosswalks where a statutory right-of-way for pedestrians exists. Article 66½, Section 236. In this case it is undisputed that the impact took place almost directly in the center of the block nowhere near any pedestrian crosswalk. There was no showing Wiles knew or should have known there were children in the area at the time. His statement that he did not see the child until he dashed into the street some 8 to 10 feet in front of him is not incredible considering this small child was standing at one point behind a

hedge and there was a car parked at the curb. A fresh "brush mark" or dent on the side of the right front fender supported Wiles' statement that the child ran into his car. Although there was a "school" sign facing southbound traffic on Sollers Point Road, the school was in the next block and the accident occurred at a time when school would not normally have been in session.

We have assumed for the purposes of this discussion that there was some testimony of excessive speed in this case, but this testimony does not rise above speculation. We have already concluded that Officer Andrejak's evidence on this point was properly excluded. Lt. Gross testified that in his opinion Wiles was going 29.755 miles per hour. His calculation of 32.89 miles per hour was in the nature of a response to a hypothetical question by appellant's counsel.

*Judgment affirmed. Costs to be paid by the appellants.*