## THEODORE C. SERDENES *v.* AETNA LIFE INSURANCE COMPANY

[No. 804, September Term, 1973.]

*Decided May 29, 1974.*

---

454

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Richard D. Rosenthal* for appellant.

*J. Snowden Stanley, Jr.*, with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Many insurance salespersons would have one believe that "you cannot have too much insurance." Unfortunately the appellant, Theodore C. Serdenes, had too much insurance coverage and the manner in which it was obtained led Aetna Life Insurance Company to seek a recision of its contract. Judge Solomon Liss, sitting in the Circuit Court for Baltimore City, granted Aetna's request that its policy issued to Serdenes be rescinded *ab initio*, and that Serdenes be required to refund disability payments made to him by Aetna, less the amount of premiums paid. Serdenes has appealed to this Court and bombards the judgment of the trial court with a legalistic salvo.

Serdenes says:

"I. The trial court erred in making a finding of fact that was inconsistent with the stipulation entered into between the parties.

II. The acceptance by appellee of the premium after the date on which they had actual notice of the correct answer to the insurance application constituted a waiver and/or estoppel as a matter of law.

III. The trial court was in error in not deciding whether appellant's limited ability in the English language coupled with the short period of time in which he had possession of the policy prior to his accident were sufficient extenuating circumstances as to excuse his inability in finding the wrong answers.

IV. The trial court erred in allowing Mr. George Foster [an employee of appellee] to testify as an expert as to applicable insurance industry standards.

V. Article 48A [§] 374 of the Maryland [Annotated] code does not allow rescission of

an insurance contract when the misrepresentations do not result in an actual loss to the company and the assured's actual recovery is distinct from the risk the insurance company was attempting to prevent."

On June 30, 1969, Serdenes made application to Aetna for an accident and disability income insurance policy. Aetna, acting upon the information contained in the application and in consideration of the annual premium of $291.00, issued its policy #SXB-52965 to Serdenes. The two questions in the application, the answers to which Aetna believes to be misrepresentation of material facts, are:

"5. What accident or disability insurance have you in force or applied for in all companies? (If non-cancellable so specify.) — Include Life, Group and State disability income benefits. If none, please check here [ ].
6. (Answer only for income insurance):
a. What percentage of your average monthly earnings is the monthly benefit from all insurance in force or applied for in this or any other application? [ ] Less than 50%; [ ] 50% to 70%; [ ] Over 70%."

An examination of the application shows that as to question number 5, the answer was "None", thus indicating that Serdenes had no other accident or disability insurance in force at the time of the completing of the application to Aetna. The answer given as to question number 6 was "Less than 50%". On September 11, 1969, Serdenes was injured in an automobile accident and made claim on November 1, 1969 upon Aetna for monthly indemnity of $600.00. Aetna paid the benefits for eleven months, or a total of $6,600.00. Thereafter Aetna determined that Serdenes was no longer disabled and payments ceased. The policy was not renewed. Following the cessation of payment benefits to Serdenes, Aetna discovered that contrary to the answer of Serdenes to question number 5 of the application, Serdenes did, on June 30, 1969, have in force two accident and sickness income

policies with American National Insurance Company on which the total benefits were $800.00 per month; a policy with American Home Assurance Company covering mortgage indemnity disability and providing a payment of $100.32 per month; a policy with Security Insurance Group of Hartford, for disability indemnity which provided for payment of $162.69 per month. Simple mathematics reveals that, exclusive of the Aetna policy benefits, Serdenes's total benefits were $1,063.01. Of course, with the addition of the Aetna benefit, Serdenes received the sum total of $1,663.01 monthly. Aetna further discovered that the disability benefits paid to Serdenes did, in fact, exceed 50% of his monthly income.

At the trial the agent, Sitaras, testified that he completed the application based upon information supplied to him by Serdenes, and that Serdenes did not tell him of other insurance policies that had been purchased from other carriers through another agent. Serdenes, on the other hand, averred that he did inform Sitaras relative to the other policies prior to the completion of the application although he concedes that the information pertaining to questions 5 and 6 is incorrect. While acknowledging that the policy contains an "Important Notice" to the effect that the application is a part of the insurance policy, should be read to ascertain its correctness, and if in error Aetna should be notified within ten days from receipt of the policy, Serdenes sought in the trial court and here to excuse his failure to rectify the false information by alleging a limited knowledge of the English language. Serdenes emigrated from Greece and, though he can read and write English, he is admittedly more at ease with his mother tongue.

## I.

In his "Memorandum Opinion" the Chancellor, after pointing out the incorrect answers to questions 5 and 6 of the application, and observing the notice provision of the insurance policy, said:

> "The insurer states that it did not learn of the existence of the additional policies until September

23, 1970 [a period of approximately five weeks after disability payments had ceased] at which time it thereupon tendered the return of the premiums paid and made demand for reimbursement of the disability payments wrongfully received by the assured; the assured refused to accept the return premiums and to repay the benefits received.

There is nothing in the course of conduct of the insurer which could lead the assured to believe that the company was not insisting on the strict compliance with the requirements of disclosure, as set out in the application."

Serdenes argues that the Chancellor made a finding of fact that was contrary to a stipulation entered into between the litigants and that such a finding of fact is violative of the holding of the Court of Appeals in *McColgan v. Hopkins*, 17 Md. 395 (1861). In that case, a replevin action, the case was submitted to the trial court on an agreed statement of facts, but the trial judge made a finding *dehors* the stipulation. The appellate Court in reversing said, "In the way in which this case comes before us, [we are] compelled to confine [ourselves] to the statement of facts agreed on, and [are] not authorized to draw any inferences of fact from those stated."

Serdenes, however, has read more into the "stipulation" used in the instant case than the record supports, so that *McColgan v. Hopkins, supra,* fails to underpin his contention. At the hearing before Judge Liss the parties agreed "that the claim form was signed and dated November 1st, 1969, and received by the company sometime during November of 1969." Serdenes asserts that the quoted stipulation means that the "[a]ppellee, insurer, therefore, had actual notice in November of 1969 of the existence of the other disability insurance policies." We think Serdenes's averment to be erroneous. The mere recitation on the claim form that Serdenes had additional insurance with "American National Ins. Co." does not indicate that he had such insurance at the time of his completing the application for the Aetna policy, and we shall not read into the stipulation more than its natural meaning.

## II.

Serdenes's second contention is bottomed on the supposition that Aetna had actual notice of the existence of other disability benefit insurance policies at the time that it accepted from him a second annual premium. Serdenes's contention is somewhat intertwined with that heretofore discussed in part I. He argues that inasmuch as he disclosed on the claim form that he had "other accident, sickness or hospital insurance" with "American National Ins. Co.", Aetna was placed on notice that he owned similar policies and that Aetna's payment of benefits to him constituted "a waiver as a matter of law." We have a different view. As we have stated in part I, the bare statement by Serdenes that he possessed a policy with the "American National Ins. Co." does not give rise to an inference that he owned that policy on June 30, 1969, the date of his application to Aetna. It is apparent from the record before us that Aetna did not know until September, 1970 that Serdenes had, in his application, furnished it with untruthful answers to questions 5 and 6. It cannot be said, therefore, that Aetna waived its right to rescind the policy simply because it accepted a second annual premium when it did so without either actual or constructive knowledge that the application upon which it had issued its policy contained material misrepresentations. Absent a showing that Aetna knew that the answers given by Serdenes were false and, nevertheless, made payment on the policy, it cannot be held to have waived its rights. *Turnbull v. Home Fire Ins. Co.*, 83 Md. 312, 34 A. 875 (1896); *Reynolds v. Mutual Fire Ins. Co.*, 34 Md. 280 (1871); *Howard v. Carpenter*, 11 Md. 259 (1857); *Ijams v. Hoffman*, 1 Md. 423 (1851). *See also* 45 C.J.S. *Insurance* § 716 (1946).

## III.

Serdenes next argues that his limited understanding of the English language, together with the short time prior to the accident that he was in actual possession of the policy, excused the incorrect answers on the application. We observe that Judge Liss found as a fact that Serdenes "is not illiterate." The Chancellor further stated "While,

concededly, [Serdenes] is more comfortable in his native Greek than in English, he can read and write English and has had an extensive background in commercial transactions." [1] In view of the court's finding that Serdenes can read and write English, the admonition on the policy itself that the application is a part of the policy, and that if it contains incorrect information the company must be notified within ten days, we cannot say that Judge Liss was clearly erroneous in concluding that Serdenes did not exercise reasonable diligence in notifying Aetna of the errors in the application. Md. Rule 1086. In *Casualty Ins. Co. v. Schmidt,* 166 Md. 562, 171 A. 725 (1934), the Court of Appeals had before it a case in which Schmidt testified that "he knew nothing of what answers were being written by the agent, that the agent was urging him to take the insurance, and filled in the application, . . . [he] did not participate in any respect in making the false answers, and did not subsequently read them in the original application or in the policy." The agent in *Schmidt,* as in the instant case, admitted that he had written the answers on the application, although unlike the instant case, the agent knew of the falsity of the answers. The Court held in *Schmidt, supra* at 570-72, that:

> "If [Schmidt], having made all the disclosure demanded of him, has relied entirely on the agent to inform the insurer of the facts, the knowledge of those facts may be imputed to the insurer, and it may not be permitted to defend on the ground of the agent's fraud, unless there has been participation in it by the applicant. Falsity and materiality in the representations in his application having been established, the plaintiff would have the burden of proving lack of complicity on his part. . . . The circumstances which will show participation by him, or lack of it, in one case and another, must differ, and courts of the country

---

1. According to Serdenes's testimony he owned a lounge, two coffee houses, a movie theater and a construction business.

have differed somewhat on the effect of circumstances proved, and especially on the effect of indifference or neglect of the applicant as an instrument in the imposition on the insurer.

... [Schmidt] knew, however, as he must have known, that he was procuring insurance against disability from accident or loss of health, and he did receive the policy, which directed his attention to the application, held it, and paid no attention to it during thirteen months subsequently, and as a consequence was not aware of the falsity in the representations as to his condition, on which the policy was procured."

The Court concluded that it was unable to distinguish *Casualty Ins. Co. v. Schmidt, supra,* from its earlier decision in *Globe Reserve Life Ins. Co. v. Duffy,* 76 Md. 293, 25 A. 227 (1892), wherein it stated, at 300-01:

"... where false answers have been written by the agent without the knowledge of the assured, but the latter has the means at hand to discover the falsehood and negligently omits to use them, he will be regarded as an instrument in the perpetration of the fraud, and no recovery could be had upon the policy. *Ins. Co. v. Fletcher,* 117 U. S. 519; *Ryan v. Ins. Co.* 41 Conn. 168; *Lewis v. Ins. Co.* 39 Conn. 100."

It is immaterial that it is the agent who inserts false statements about material matters in an application for insurance, because if the assured has the means to ascertain that the application contains false statements, he is charged with the misrepresentations just as if he had actual knowledge of them and was a participant therein. *New York Life Insurance Co. v. Fletcher,* 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934 (1886); *Monumental Ins. Co. v. Taylor,* 212 Md. 202, 129 A. 2d 103 (1957); *Casualty Ins. Co. v. Schmidt, supra; Insurance Co. v. Main,* 140 Md. 220, 117 A. 571 (1922); *Globe Reserve Life Ins. Co. v. Duffy, supra.* Nor would our holding be different if Serdenes were illiterate. Illiteracy

would not relieve him of his obligation to inform himself of the content of the application by having it read to him by someone whose interests were not antagonistic to his own before he signed it. *Gingell v. Backus,* 246 Md. 83, 227 A. 2d 349 (1967); *Merit Music v. Sonneborn,* 245 Md. 213, 225 A. 2d 470 (1967); *Thomas v. Erie Ins. Exchange,* 229 Md. 332, 182 A. 2d 823 (1962); *Monumental Ins. Co. v. Taylor, supra; Wilson v. Pritchett,* 99 Md. 583, 58 A. 360 (1904); *Spitze v. B. & O. R.R. Co.,* 75 Md. 162, 23 A. 307 (1892).

## IV.

Serdenes's fourth contention is an attack upon Judge Liss's ruling that a witness produced by Aetna could testify as an expert. Serdenes takes umbrage at the court's ruling that the witness was an expert because the witness "had not graduated high school and had no experience in the insurance field other than the application of the rules of his company to policies of insurance." We observe that the witness testified that he had forty-nine years experience with Aetna and was one of the supervisors of the underwriting department. He said that he participated in the drafting of the company's underwriting rules [2] and that he had the responsibility of deciding whether the company would accept the risk in all health and accident insurance applications. Of course, lack of formal education does not negate the expertise of a particular witness. It is the witness' knowledge of the subject matter, often gained through experience, that determines whether the witness is an expert. In the instant case there can be no serious question but that the witness, with forty years experience in the underwriting field, was an expert on the subject of health and accident policies. The decision as to whether a witness is an expert, and thus qualified to offer an "expert opinion" rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial judge's ruling is

---

2. There may be many rules that a company may have that the applicant for insurance does not know of when he completes the application. Those rules may be designed by the company for its internal underwriting guidance, and because it wants the truth not merely compliance, it does not disclose to the applicant all of its rules.

clearly erroneous or he has abused his discretion. *Beckner v. Chalkley,* 19 Md. App. 239, 310 A. 2d 569 (1973); *Murphy v. Bd. of County Comm'rs,* 13 Md. App. 497, 284 A. 2d 261 (1971). *See also Spence v. Wiles,* 255 Md. 98, 257 A. 2d 164 (1969); *Nizer v. Phelps,* 252 Md. 185, 249 A. 2d 112 (1969); *Owens v. Creaser,* 14 Md. App. 593, 288 A. 2d 394 (1972), *rev'd on other grounds,* 267 Md. 238, 297 A. 2d 235 (1972).

In *Spence v. Wiles, supra,* the Court said at 102-103:

> "The rule is that before a witness is permitted to offer an expert opinion, it must be shown that he possesses both the necessary qualifications and also the factual information necessary to form such an opinion. . . . The qualifications of a proposed expert witness are a matter for the trial court to pass upon. . . ."

Judge Liss, speaking of the witness, said:

> "Well, he may be a technician, but if he is, he is an expert technician. His job is something different than the ordinary man would be able to do. He has the responsibility of deciding whether or not the company will or will not accept a risk which is submitted to it by an application for insurance. Now, assuming that he has been in this field for forty years, as he has testified, and that since starting in this field he is now a supervisor or superintendent of five other underwriters who work under him, and their responsibility is the same as his in that it is their responsibility to determine whether or not a company will accept the risk, then it seems to me he is an expert in underwriting on the question of health and accident insurance. It may very well be that educationally he does not have the background that some other underwriters may have, that certainly may go to the weight of his testimony, but I don't think that it goes to the question of whether or not he can testify as an expert. I would say a man who has been in a field for forty years in what amounts to be a highly

technical field and has risen to the point where he is one of two supervisors of a business as tremendous as Aetna Life Insurance Company must be, I certainly take judicial notice that Aetna Life Insurance Company is one of the largest insurance companies in the country, and I would then think that he is qualified as an expert. Of course, you may question his expertise and the weight of his testimony when you get to that, but I am going to rule he is an expert."

It is clear to us from a reading of the record that in Judge Liss's view the witness did qualify as an expert, and we are unable to say that his ruling was clearly erroneous or an abuse of discretion. *Spence v. Wiles, supra; Beckner v. Chalkley, supra.*

## V.

Lastly, Serdenes argues that Md. Ann. Code Art. 48A, § 374 does not allow recision of an insurance contract when the misrepresentations do not result in an actual loss to the insurance carrier. We have carefully scrutinized the record, but we are unable to find that this issue was raised or decided by the trial court, and *ergo,* it is not before us. Md. Rule 1085. We have repeatedly held that we will not consider questions raised for the first time on appeal. *Binder v. Binder,* 16 Md. App. 404, 297 A. 2d 293 (1972); *Winterstein v. Wilcom,* 16 Md. App. 130, 293 A. 2d 821 (1972); *Sun Cab Co. v. Walston,* 15 Md. App. 113, 289 A. 2d 804 (1972), *aff'd,* 267 Md. 559, 298 A. 2d 391 (1973).

We do observe, however, that if the matter were properly before us, the misrepresentations made by Serdenes to Aetna were material to their acceptance of the risk, Md. Ann. Code Art. 48A, § 374(2), and hence fall within the exceptions specified in the statute.

*Judgment affirmed; costs to be paid by appellant.*